David W. STEINMAN, Appellant,

v.

Cornelius E. STROBEL and Donald O. Schnieders, Respondents.

No. 61245.

Supreme Court of Missouri,
En Banc.

Nov. 14, 1979.

Rehearing Denied Dec. 6, 1979.

Thomas A. Vetter, Dale C. Doerhoff, Jefferson City, for appellant.

Marvin E. Wright, Columbia, for respondent Schnieders.

John E. Burruss, Jr., Jefferson City, for respondent Strobel.

PER CURIAM:

Plaintiff Steinman sued defendants Strobel and Schnieders for personal injuries. Strobel was driving a pickup truck in a westerly direction ahead of Steinman's motorcycle. Steinman was approximately thirty feet behind Strobel's pickup truck and traveling at an estimated speed of forty-five miles per hour. Schnieders was driving a tractor-trailer in an easterly direction. The road was narrow and all vehicles were approaching a bridge at the bottom of a grade. Stroble slowed his pickup truck. Steinman's motorcycle collided with the rear end of the pickup truck, and veered into the eastbound lane into collision with the tractor-trailer operated by Schnieders.

Plaintiff alleged that defendant Strobel slowed without adequate timely warning; that respondent Schnieders failed to slacken speed after he knew or should have known that plaintiff was in a position of immediate danger; that both defendants were thus negligent, and their combined negligence caused his injuries. Defendants alleged that plaintiff's own negligence with respect to speed, lookout, following too closely, driving on the wrong side of the road, etc., was the cause of his injuries.

Plaintiff moved unsuccessfully to strike defendants' allegations of contributory negligence on the ground that contributory negligence was a "harsh rule which could unfairly place the entire burden of loss" on plaintiff; and for trial of the case on a theory of comparative negligence. After plaintiff's opening statements, both defendants moved for directed verdict. The trial court sustained the Schnieders motion and overruled Strobel's motion. The case proceeded to trial and plaintiff's contributory negligence was included in the submission to the jury. The jury returned a verdict in favor of Strobel and against plaintiff. Plaintiff's motion for new trial preserved the request for trial on comparative negligence. The trial court overruled the motion for new trial, and plaintiff appealed to the Western District of the Missouri Court of Appeals.

The appeal was transferred prior to opinion to consider again whether a concept of comparative negligence should be judicially adopted in Missouri, a matter previously deemed better suited for legislative action. *Epple v. Western Auto Supply Co.,* 557 S.W.2d 253 (Mo. banc 1977).

A change from contributory negligence to comparative negligence encompasses much more than simply allowing plaintiffs who are partially at fault to recover part of their damages. Numerous questions exist such as whether to retain Missouri's humanitarian doctrine; and the effect of comparative negligence on other doctrines such as contribution, indemnity and joint and several liability, to name but a few. In the latter respects, see the California experience with judicial adoption of comparative negligence in *Li v. Yellow Cab Co.,* 13 Cal.3d 804, 119 Cal.Rptr. 858, 532 P.2d 1226 (1975), and *American Motorcycle Assn. v. Superior Court,* 20 Cal.3d 578, 146 Cal.Rptr. 182, 578 P.2d 899 (1978), and the comment at 18 Santa Clara Law Review, pp. 780–807 (1978).

This case does not demonstrate appropriate circumstances for judicial adoption of comparative negligence; and the view expressed in *Epple v. Western Auto Supply Co.,* supra, is reaffirmed.

Accordingly, this appeal is retransferred to the Western District of the Missouri Court of Appeals.

RENDLEN, MORGAN and HIGGINS, JJ., concur.

WELLIVER, J., concurs in separate concurring opinion filed.

BARDGETT, C. J., and DONNELLY, J., dissent in separate dissenting opinions filed.

SEILER, J., dissents and concurs in separate dissenting opinion of DONNELLY, J.

WELLIVER, Judge, concurring.

I concur. This is the first time since coming to the Court that I have had an opportunity to express any opinion on either the doctrine of comparative negligence or the doctrine of relative fault.

Philosophically, I am persuaded that the doctrine of pure comparative negligence, like that of pure relative fault as it was first announced in *Missouri Pacific v. Whitehead and Kales,* 566 S.W.2d 466 (Mo. banc 1978), is far more attuned to the needs and realities of modern day society than our existing body of tort case law, rules and statutes.

I recognize that this state should not adopt pure comparative negligence across the board without dealing with contributory negligence, the humanitarian doctrine, contribution, indemnity, joint and several liability, res ipsa loquitur, the rear-end doctrine, the doctrine of strict tort liability, the holding of *State ex rel. McClure v. Dinwiddie*[1] that a plaintiff may choose the defendant he desires to sue, interspousal immunity, The Workmen's Compensation Law,[2] court rules, instructions, suitable methods for the release of claims where there are multiple defendants, and possibly other matters.

To adopt comparative negligence without undertaking a systematic treatment of this multitude of related issues would be to place the bar on a violent and stormy sea of uncertainty and frustration that would make the post-Whitehead and Kales era seem a serene and placid mountain lake in comparison. Any single opinion that would attempt to deal with all of these issues could only result in a giant legislative enactment by judicial fiat. My inability to find agreement among scholars, judges, lawyers, or my brothers of this court as to the exact form of "comparative negligence" best suited to our social and economic needs also makes me reluctant to do other than concur in the per curiam.

The adoption of pure relative fault in *Whitehead and Kales* constituted a first step toward the judicial adoption of pure comparative negligence. I interpret our action of this date as a reversal of our prior

1. 358 Mo. 15, 213 S.W.2d 127, 131 (1948).

2. § 287.120.1, RSMo 1978.

course which was in the direction of adoption of comparative negligence by judicial action. Having so reversed our course, I believe we should now extricate both the bar and the litigants of this state from the twilight zone of partial pure relative fault created by our prior decisions in *Whitehead and Kales* and *State ex rel. Maryland Heights Concrete Contractors, Inc., v. Ferriss.*[3] I believe that we should overrule *Whitehead and Kales* and return the law of torts in Missouri to whatever degree of stability existed for the one hundred and fifty years prior that decision.

By this opinion I would announce to my former colleagues of the General Assembly that, with respect to comparative negligence, "the ball is now in your court".

I would urge their most thorough study and consideration of the comparative negligence doctrine as a method of redressing injuries resulting from negligent acts. The legislative process has a superior capability for getting the input of the finest legal scholars, the best trial lawyers, and the consumer public in determining the system of tort law best adapted to our present day social and economic needs. "No area of the law cries out more for a clear policy established by democratically elected representatives." *American Motorcycle Association v. Superior Court,* 20 Cal.3d 578, 617, 146 Cal. Rptr. 182, 208, 578 P.2d 899, 925 (1978).

BARDGETT, Chief Justice, dissenting.

I would adopt a comparative fault system in this case and abandon contributory negligence, last clear chance, and humanitarian doctrines in Missouri.

The purpose of this dissent is to make clear that there is an alternative to the concepts enunciated by Judge Donnelly in his dissenting opinion which is also known as "pure" comparative fault but which does not involve abandonment of joint liability nor permit a person to be joined as a party even though no judgment could be rendered against him.

In the state of California "pure" comparative fault was adopted in *Li v. Yellow Cab Co.,* 13 Cal.3d 804, 119 Cal.Rptr. 858, 532 P.2d 1226 (1975), as opposed to other types of comparative negligence systems, such as the one in effect in the state of Wisconsin which prohibits recovery if the claimant is more than fifty percent negligent. In *American Motorcycle Assn. v. Superior Court,* 20 Cal.3d 578, 146 Cal.Rptr. 182, 578 P.2d 899 (1978), the Supreme Court of California adopted the system of distribution of fault as between tort-feasors very similar to what this court adopted in *Missouri Pacific Railroad Co. v. Whitehead & Kales Co.,* 566 S.W.2d 466 (Mo. banc 1978). In *American Motorcycle, supra,* the Supreme Court of California dealt with the ancillary matters attending the adoption of a comparative fault system and, inter alia, retained joint liability, but as between tort-feasors allowed the same type of apportionment as this Court allowed in the *Whitehead & Kales* case. The reader may see those cases for the reasoning and details of the system in effect in California.

Essentially, I would adopt the system as set forth in *Li v. Yellow Cab, supra,* and *American Motorcycle Assn. v. Superior Court, supra.*

DONNELLY, Judge, dissenting.

I would abandon contributory negligence and the last clear chance and humanitarian

---

**3.** In *Maryland Heights,* 588 S.W.2d 489, filed September 11, 1979 (Mo. banc) rehearing denied contemporaneously herewith, this Court refused to compel the joinder of decedent's employer as a third-party defendant in a wrongful death action brought against a construction subcontractor because judgment and recovery against the employer was legally barred under § 287.120.1, RSMo 1978. As pointed out in the dissenting opinion filed by Donnelly, J., in that case, refusing to permit a third party petition against the employer for the purpose of comparing the employer's fault is inconsistent with the general principles announced in *Whitehead and Kales.* A parallel problem arises in the wake of *Whitehead and Kales* in the context of attempts to settle with one of several defendants. In short, the adoption of relative fault in *Whitehead and Kales* has resulted in a situation in which no attorney in this state can confidently negotiate and draft an effective release of a client or opponent.

doctrines as viable concepts in Missouri and would reverse and remand this case for trial under a concept of *pure* comparative fault.

I am mindful of the *classical common law* process articulated in R. Bridwell and R. Whitten, *The Constitution and the Common Law* 13–15 (Lexington, Massachusetts: D. C. Heath and Company, 1977). That process is given flexibility to embrace change by the doctrine "of desuetude, or the repeal of custom by disuse. Just as custom would be gradually introduced and adopted by consent, so might it gradually be abrogated by the 'tacit consent of all.'" *Id.* at 22.

In James, *Comments on Maki v. Frelk,* 21 Vand.L.Rev. 891, 895 (1968), it was noted "that juries now do for plaintiffs illicitly what the change [to comparative negligence] would do for them forthrightly. * * * Juries * * * probably speak for the community sense of fairness more faithfully than do legislatures. Consistent jury acceptance of proportional negligence * * * suggests that legislative failure to enact this reform reflects inertia rather than community sentiment."

I agree. In my view, juries in Missouri have effectually repealed the "all-or-nothing" doctrine of contributory negligence by disuse. Now embraced by general acceptance is the concept that where persons contribute to cause an occurrence, and damage is suffered, each should bear responsibility only in proportion to his fault. As I perceive it, this is the essence of the concept of *pure* comparative fault.

In *Missouri Pacific Railroad Co. v. Whitehead & Kales Co.,* 566 S.W.2d 466, 474 (Mo. banc 1978), this Court held that the "principle of fairness imbedded within our law compels * * * [the] adoption of a system for the distribution of joint tort liability on the basis of relative fault." Most significantly, we embraced the concept, as explicated in Rawls, *A Theory of Justice,* that "in exchange for the opportunity of some undertaking, we each promise all others that we will be liable for the damage which our own negligence in the undertaking has caused." *Id.* at 469. Therefore, the essential question in this case narrows to

whether the *Rawls concept* should apply to all parties—defendants *and* plaintiffs. Of course, it must.

The doctrine of contributory negligence is court-made. *Butterfield v. Forrester,* 11 East 60, 103 Eng.Rep. 926 (1809). The last clear chance and humanitarian doctrines are court-made. *Davies v. Mann,* 10 M & W 546, 152 Eng.Rep. 588 (1842); McCleary, *The Bases of the Humanitarian Doctrine Reexamined,* 5 Mo.L.Rev. 56 (1940). The teaching of *Abernathy v. Sisters of St. Mary's,* 446 S.W.2d 599 (Mo. banc 1969) is that we need not defer to the General Assembly in the circumstances of this case.

Accordingly, I would adopt a system of *pure* comparative fault, as follows:

I. *Effect of Contributory Fault.*

(a) In an action based on fault to recover damages for injury or death to person or harm to property, any contributory fault chargeable to a claimant diminishes proportionately the amount awarded as compensatory damages for any injury attributable to that claimant's contributory fault, but does not bar recovery. This rule applies whether or not the claimant's contributory fault heretofore constituted a defense or was disregarded under applicable legal doctrines, such as the last clear chance and humanitarian doctrines.

(b) "Fault" includes acts or omissions that are in any measure negligent or reckless toward the person or property of the actor or others, or that subject a person to strict tort liability. The term also includes breach of warranty, unreasonable assumption of risk not constituting an enforceable express consent, misuse of a product for which the defendant otherwise would be liable, and unreasonable failure to avoid an injury or to mitigate damages. Legal requirements of causal relation apply both to fault as the basis for liability and to contributory fault.

II. *Apportionment of Damages.*

(a) In all actions involving fault of more than one person, the court, unless otherwise agreed by all parties, shall in-

struct the jury to make findings, indicating:

(1) the amount of damages each claimant would be entitled to recover if his contributory fault is disregarded; and

(2) the percentage of the total fault that is allocable to each tort-feasor-party, including claimants. For this purpose the court may determine that two or more persons are to be treated as a single party. The percentages shall total 100%.

(b) A tort-feasor's percentage of fault shall be taken into consideration in determining the total fault even though judgment cannot be entered against him. Where the evidence warrants it, the court shall add that person as a party solely for the purpose of determining and allocating fault upon a 100% basis.

(c) In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of the person and the extent of the causal relation between the conduct and the damages claimed.

(d) The court shall determine the award of damages to each claimant, and shall state in the judgment the amount which represents each party's share of the obligation to each claimant in accordance with the respective percentages of fault found, holding each party responsible by judgment only for his apportioned amount. There shall be no set-off between claimants.

(e) The court shall not enter judgment against a tort-feasor-party, in accordance with the percentage of his fault found, if the claim against him is barred by release or by law.

It should be apparent that in adopting a system of *pure* comparative fault in Missouri I would borrow freely, but selectively, from the Uniform Comparative Fault Act, 12 U.L.A. (1977). *See also* Wade, *A Uniform Comparative Fault Act—What Should It Provide?*, 10 Univ. of Mich.J. of L.Ref. 220 (1977).

It should also be apparent that *in the usual comparative fault situation* I would do away with joint and several liability among tort-feasors held responsible by the trier of fact; they should be liable only severally, and not jointly. *See* Adams, *Settlement After Li: But Is It "Fair"?* 10 Pac.L.J. 729, 739–40 (1979). Otherwise, "one defendant could, in derogation of the stated purposes [of pure comparative fault], be apportioned a responsibility for satisfying damages greater than his own proportionate share of fault." Timmons and Silvis, *Pure Comparative Negligence in Florida: A New Adventure in the Common Law,* 28 Univ. of Miami L.Rev. 737, 778 (1974). *See also* Note, *Multiple Party Litigation Under Comparative Negligence in Kansas— Damage Apportionment as a Replacement for Joint and Several Liability,* 16 Washburn L.J. 672 (1977); Note, *Reconciling Comparative Negligence, Contribution, and Joint and Several Liability,* 34 Wash. & Lee L.Rev. 1159, 1170–71 (1977).

I respectfully dissent.