Daryl D. KOHLER, Plaintiff,

v.

ROCKWELL INTERNATIONAL
CORP., Defendant.

J. R. PREWITT & SONS, INCORPO-
RATED, Appellant and Third
Party Plaintiff,

v.

John KOHLER and Phil Kohler, Respondents and Third Party Defendants.

No. WD 30759.

Missouri Court of Appeals,
Western District.

June 9, 1980.

Phil M. Cartmell, Jr., Michael J. Gallagher and Stephen B. Sutton, Kansas City, for appellant; Gage & Tucker, Kansas City, of counsel.

Max W. Foust, G. Spencer Miller and Ed G. Dougherty, Kansas City, for respondents; Morris & Foust, Kansas City, of counsel.

Before KENNEDY, P. J., and PRITCHARD and SWOFFORD, JJ.

PRITCHARD, Judge.

Plaintiff, Daryl D. Kohler, brought action for personal injuries on the theory of products liability against Rockwell International Corp. and J. R. Prewitt & Sons, Incorporated, arising out of an occurrence on January 5, 1963. Daryl was then 10½ years of age, and his brother, Phil, age 14, was then operating a tractor which supplied power to a wagon unloader which was alleged to have defects which caused Daryl's injuries. The wagon unloader had been purchased some six years before the occurrence on January 5, 1963, by Daryl's father, John Kohler, and it was undisputed that certain safety devices available generally at the time of sale were not in use on the wagon unloader at the time of the accident.

Appellant, Prewitt, sought by third party plaintiff petition to implead Daryl's father, John, and his brother, Phil, for indemnification under *Missouri Pac. R. Co. v. Whitehead & Kales Co.*, 566 S.W.2d 466 (Mo. banc 1978). The issues are whether (1) the parental immunity doctrine, and (2) the so-called intra-family doctrine bar the actions for indemnity against the father and brother of the plaintiff for contribution on the basis of their alleged relative fault as concurrent tort-feasors. As to John, the third party petition alleged that the drive unit of the wagon was purchased from Prewitt, and John received, was offered, or purchased safety devices consisting of a shield to enclose and cover the drive unit, a safety rope apparatus which kept the wagon unloader drive unit out of reach of the operator while shifting, and instructions and warnings to the operator while shifting, and that John was negligent in failing to warn Daryl of the alleged dangers, but ordered him to operate the machinery and thereby knowingly exposed him to danger. As to Phil, Prewitt alleged that he was negligent in failing to stop the drive unit when Daryl approached it; in instructing Daryl to stand by the drive unit when it was rotating; and in failing to operate the drive unit in the appropriate manner by use of the tractor clutch so he could stop it at the first stage or impending injury and before the injury was suffered. The trial court dismissed Prewitt's third party petition.

The doctrine of parental immunity in this country seems to have its origin in the case of *Hewlett v. George*, 68 Miss. 703, 9 So. 885 (1891), and many cases are traced thereafter in *Wells v. Wells*, 48 S.W.2d 109, 110 (Mo.App.1932). A number of jurisdictions have abolished the parental immunity doctrine, but Missouri is not one of them. See the recent case of Rosanna Nocktonick, a minor, by her guardian, Nocktonick *(Wayne Matson) v. Nocktonick, and Farmers Alliance Mutual Insurance Company*, 227 Kan. 758, 611 P.2d 135 (1980) [which upheld the right of a minor to sue her alleged tort-feasor mother in an automobile case, and which noted seven jurisdictions which have abolished parental immunity

without restrictions, and nineteen jurisdictions which have abolished it in automobile accident cases]; see also Anno. 41 A.L.R.3d 904, 964. The reason for the doctrine announced in the *Hewlett* case is stated, " 'to permit a child to maintain an action in tort against the parent is to introduce discord and contention where the laws of nature have established peace and obedience.' " *Wells*, however, refused to apply the doctrine of parental immunity where a mother sued her minor son (and another son who was 28 years of age) for personal injuries arising from an accident in an automobile, in which the mother was a passenger, and which was being driven by the minor son under the direction of the older son, under an allegation that he "did carelessly and negligently drive and operate the same 'by travelling at an excessive and reckless rate of speed, and by carelessly and negligently applying the brakes while the same was travelling at a dangerous and excessive rate of speed.' " The court noted that suits were allowed between adversary child and parent involving title to real estate, actions in debt, will contests, probate proceedings, fraud, and the like, saying that such suits would (also) introduce discord and contention in the home, "but it will not be claimed that the law forbids such action." The court affirmed the judgment for the plaintiff mother, following *Dix v. Martin*, 171 Mo.App. 266, 157 S.W. 133 (1913), which affirmed a judgment for an infant plaintiff against one standing in loco parentis to her for cruelly whipping her, the *Dix* Court saying, 157 S.W. page 136, "The assault was wicked and criminal, and, assuming that defendant stood in the relation of a parent to plaintiff, she should answer for the damages resulting from such excessive punishment."

No real analogy is presented as between the *Wells* and *Dix* cases, the former apparently being for ordinary negligence, and the latter being for an intentional tort. In any event, it appears that Missouri still follows the general rule of the *Hewlett* case, with exceptions and reservations, as noted in the following decisions. *Cook v. Cook*, 232 Mo. App. 994, 124 S.W.2d 675, 676 (1939), noted

that the facts of the *Dix* case, supra, were that the defendant stood in the position of master to the plaintiff, not in loco parentis, so it would appear that *Dix* was no authority for the *Wells* decision. The *Cook* case denied the right of the adopted minor child to sue the adoptive parent for striking her with a riding whip, even though there was a willful, wanton and malicious assault, the court noting that this state has ample provisions for criminal punishment for those types of assaults. In *Baker v. Baker*, 364 Mo. 453, 263 S.W.2d 29 (1953), an infant 15 months old was denied the right to sue her father for negligently injuring her while backing an automobile out of the home driveway, although the father had insurance against liability. The court noted that the *Hewlett* case, supra, had been severely criticized, and *Roller v. Roller*, 37 Wash. 242, 79 P. 788 (1905), was overruled in *Borst v. Borst*, 41 Wash.2d 642, 251 P.2d 149 (1952), in which an exception was carved out of the immunity doctrine where the father was engaged in a business venture at the time he ran over the minor child, and was not then discharging any parental duties. In the cited case of *Cowgill v. Boock*, 189 Or. 282, 218 P.2d 445 (1950), the tort was willful and malicious, and the *Baker* court said, "We do not have any of these exceptions in the case under consideration." 263 S.W.2d page 31. As an exception, the case of *Wurth v. Wurth*, 322 S.W.2d 745 (Mo. banc 1959), held that the evidence showed that the plaintiff had been *emancipated at the time of her injury* which was occasioned by her father's negligence.

Emancipation alone, however, cannot be an exception in this case to the application of the doctrine of parental immunity. As noted, Daryl was only 10½ years of age at the time of his injury, although undoubtedly at the time his action was filed, he had attained his majority. "An emancipated child cannot maintain an action against his parent for a tort committed before emancipation if at the time of the wrong the action was not maintainable." 59 Am.Jur.2d, Parent and Child, § 157, p. 256. In *Brennecke v. Kilpatrick*,

336 S.W.2d 68 (Mo. banc 1960), a decision holding that the parental immunity doctrine was not a bar to a minor's claim in tort against the estate of her deceased parent (because there was no longer in existence a family relationship), it was said, at page 73[3], "In the case before us we rule that a cause of action existed *when* the alleged negligently inflicted injury occurred * * *." [Italics added.] In *Brown v. Parker*, 375 S.W.2d 594, 604[15, 16] (Mo. App.1964), it was held that the procedural disability [parental immunity] was not removed by the fact that at the date of the answer being filed, the defendant had reached his majority. See also Anno. 41 A.L.R.3d 904, 940, § 6.

Interspousal immunity has been applied as a bar to indemnity actions under the *Whitehead & Kales* case, supra. See *Martinez v. Lankster*, 595 S.W.2d 316 (Mo. App.1980); and *Renfrow v. Gojohn*, 600 S.W.2d 77 (Mo.App.1980). Ordinarily, by analogy, under the present state of the law in this state, the parental immunity of John in a direct action for personal injuries in tort brought by his son, Daryl, would bar the action unless some exception exists. Here, the trial court in entering summary judgment against Prewitt on its third party petition, applied the doctrine of parental immunity as an absolute bar to that petition, and did so without receiving any evidence on the issue. Prewitt here says that it should be entitled to develop evidence that Daryl was injured while engaged in farming business activities of his father, John. Respondents say that Prewitt had the opportunity to develop evidence of the exception. But the third party petition was clearly ruled upon the basis that it failed to state a claim because of the parental immunity doctrine. Prewitt should be given the opportunity on remand to develop any evidence of the exception. See Anno. 41 A.L. R.3d 904, 951, § 9.

As to Prewitt's claim for indemnity against Daryl's brother, Phil, the doctrine of intrafamily immunity does not exist in this state, nor has Phil cited any case which would support the creation of any broad immunity between family members (sib-

lings). See the cases collected in Anno. 81 A.L.R.2d 1155, 1157, § 2, where it is said, "Defendants in many cases involving siblings have argued that the reasoning of the courts in parent-child or husband-wife cases, namely, that to permit such actions would disrupt family harmony, encourage fraud and collusion, etc., should be applied to cases where plaintiffs and defendants are members of the same family and household, living together under the same parental authority. *These arguments have been uniformly rejected.*" [Italics added.] See also Prosser, Law of Torts, 4th Ed., § 122, p. 866, and cases and authority there cited.

The judgment is reversed outright as to the dismissal of the third party petition against Phil Kohler, and the case is remanded for further proceedings. The judgment is reversed as to the dismissal of the third party petition against John Kohler, and the case is remanded for a determination of any exception to the parental immunity doctrine, and if so determined, for further proceedings.

All concur.