Justin Cole KENDALL, a Minor, by his Next Friend, Timothy L. Brake, and James Kendall and Linda Kendall, Respondents,

v.

SEARS, ROEBUCK AND CO., and Roper Corporation, Appellants.

No. 63086.

Supreme Court of Missouri, En Banc.

June 8, 1982.

Joseph E. Stevens, Jr., William Ray Price, Jr., Kansas City, for appellants; Lathrop, Koontz, Righter, Clagett, Parker & Norquist, Kansas City, of counsel.

Morris & Foust, Max W. Foust, E. Wayne Taff, Kansas City, for Justin Cole Kendall.

Lantz Welch, P. C., Timothy L. Brake, Kansas City, for next friend.

Deacy & Deacy, Spencer J. Brown and Phillip B. Grubaugh, Kansas City, for respondents.

MORGAN, Judge.

This appeal involves a judgment[1] in the form of an order sustaining respondents' (plaintiffs') pretrial motions to dismiss appellants' (defendants') counterclaims and overruling appellants' pretrial motion to disqualify respondents' counsel.

A bare recital of the facts should be adequate. This suit was instituted in May of 1978, alleging that a minor, Justin Cole Kendall, was injured by a lawnmower manufactured by appellant Roper Corporation, distributed by appellant Sears, Roebuck and Company, and operated by James Kendall, father of the injured minor, who initially brought his son's action as next friend. The petition for damages predicates separate claims under negligence, products liability, and breach of warranty theories. Separate answers and counterclaims were filed, with the latter alleging that James Kendall had operated the lawnmower negligently and thereby caused his minor son's injuries.

Twelve days following the filing of the answers and counterclaims, respondents moved to dismiss the counterclaims on the basis of parental immunity. On December 17, 1978, the Circuit Court of Jackson County (Division 10) overruled the motions to dismiss. On June 20, 1979, appellants moved to disqualify respondents' counsel on

1. Declared by the trial court to be a "final judgment for purposes of appeal."

the basis of a conflict of interest. In response to appellants' motion to disqualify, respondents moved for a rehearing of the overruling of the motions to dismiss the counterclaims.

On April 29, 1980, the Circuit Court of Jackson County (Division No. 5) sustained respondents' motions to dismiss and overruled appellants' motion to disqualify counsel. On May 8, 1980, the court set aside the order of April 29, 1980, appointed a successor next friend, one Timothy Brake, for the minor and ordered an evidentiary hearing to determine the applicability of the doctrine of parental immunity to appellants' counterclaims. On July 31, 1980, following a hearing, the court again sustained the motions to dismiss and overruled the motion to disqualify. After appeal, we accepted transfer and now decide the case as upon original appeal.

Appellants present three points for consideration: (1) the trial court erred in dismissing appellants' counterclaims on the basis of the doctrine of parental immunity; (2) the doctrine of parental immunity should be abrogated; and (3) the trial court abused its discretion in failing to disqualify respondents' legal counsel. Our disposition of the first two points necessarily disposes of the last.

■ We look to the "abrogation" issue first. Appellants contend the doctrine of parental immunity is now ill-reasoned and has been fatally eroded by our own and other judicial decisions. In response, we need but take this opportunity to reaffirm our recent holding in *Fugate v. Fugate*, 582 S.W.2d 663 (Mo. banc 1979), and endorse again the procedure approved therein for making application of the doctrine dependent upon a case by case basis. 582 S.W.2d at 667, 669. Finding no persuasive reason for doing otherwise, we decline appellants' invitation to abrogate parental immunity outright.

Turning our attention to appellants' assertion that the trial court erred in dismiss-

ing their counterclaims, we note that this is our first opportunity to examine parental immunity since this court's pronouncement permitting apportionment of joint tort liability and contribution between tortfeasors in *Missouri Pacific R. Co. v. Whitehead & Kales Co.*, 566 S.W.2d 466 (Mo. banc 1978). Nevertheless, we are not without guidance. Appellate courts within the state have had an opportunity to consider the effect of apportionment and contribution upon parental immunity and other closely related doctrines. We keep in mind that both the counterclaims herein[2] and "contribution" rest upon the same theory: a common legal liability accountable to two or more tortfeasors.

*Martinez v. Lankster*, 595 S.W.2d 316 (Mo.App.1980), involved contribution and interspousal immunity. There, plaintiff was a passenger in a car operated by her husband and was injured in an auto accident with defendant. Defendant moved to join plaintiff's husband as a third party defendant. The Eastern District, citing *Whitehead & Kales*, found the basis of a third party action to be a common liability to the plaintiff. Since the doctrine of interspousal immunity proscribed any liability of the husband for negligent injuries to the spouse-plaintiff, the court held no contribution could be obtained. *See also Renfro v. Gojohn*, 600 S.W.2d 77 (Mo.App.1980).

The relationship between parental immunity and *Whitehead & Kales* was examined by the Western District in *Kohler v. Rockwell International Corp. and J. R. Prewitt & Sons, Inc.*, 600 S.W.2d 647 (Mo.App.1980). Plaintiff, a minor, brought suit to recover damages for injuries allegedly caused by defective farm equipment manufactured by defendant Rockwell, sold by defendant Prewitt, owned by his father and operated by his brother. Defendant Prewitt attempted to implead both father and brother claiming their negligence contributed to plaintiff's injuries. Upon motion the trial court dismissed both father and brother and defendant appealed. Although the cause

---

2. Each counterclaim asserts the right to recover against plaintiff James R. Kendall "in any amount which it [defendant] is held liable to pay plaintiff Justin Cole Kendall. . . ."

was remanded,[3] the holding that parental immunity barred the impleader action with respect to the father was left intact. Reasoning by analogy, the court observed that since parental immunity barred plaintiff son from bringing a direct action against his father, the father would not be susceptible to an action seeking contribution. *See* also *MFA Mutual Ins. Co. v. Howard Construction Co.*, 608 S.W.2d 535 (Mo.App.1980) (citing *Martinez, supra, Renfro, supra*, and *Kohler, supra*, in reaching similar conclusions).

After careful consideration of the briefs submitted and arguments made, we affirm the trial court's dismissal of appellants' counterclaims.

■ We need but acknowledge the very language of *Whitehead & Kales* which persuades us that parental immunity bars the proposed counterclaims raised herein. *Whitehead & Kales* held that: "the right to non-contractual indemnity presupposes *actionable* negligence of *both* parties toward a third party. *Donald v. Home Service Oil Co.*, 513 S.W.2d 426 (Mo. banc 1974); *State ex rel. Merino v. Rose,* 362 Mo. 181, 240 S.W. 2d 705 (Mo. banc 1951); *Best v. Yerkes,* 247 Iowa 800, 77 N.W.2d 23 (1956); 1 J. Dooley, Modern Tort Law § 26.07, at 547 (1977)," 566 S.W.2d at 468 (Emphasis added). "The essential thing is the attempt to be fair as between persons subjected to a *common legal liability.*" *Id.* at 469 (Emphasis added). Since the doctrine of parental immunity is of continuing viability, it becomes apparent that if the doctrine is applicable in the case, any legal liability on the part of the parent for negligent acts has been removed.

■ The trial court in the case now before us held an evidentiary hearing to determine whether (1) the legal proceedings would disrupt family harmony or subvert parental control and discipline, or (2) whether the minor was emancipated, as per

*Brennecke v. Kilpatrick,* 336 S.W.2d 68, 70 (Mo. banc 1960), and *Fugate, supra.* The court found the minor to be unemancipated, and that there would be a disruption of family tranquility if the claims against the father were allowed. This finding is supported by the evidence presented, and we hold it not to be an abuse of discretion. Thus, parental immunity shields the minor's parent from any liability for negligent acts, if any, towards the son.

■ Appellants argue to the Court that parental immunity is but a "procedural" bar, not a substantive one, and as such a parent may be liable to another (premised upon liability between parent and child), though not subject to suit by the child. We recognize that this is a minority concept;[4] yet apportionment of liability in this state, as noted previously, rests upon "actionable negligence of both parties toward a third party" and "common legal liability." Whether parental immunity is procedural or substantive, it still proscribes any actionable negligence towards the parent. In other words, if the minor Justin Kendall cannot sue his father, there is no "actionable negligence" nor any "common liability" on the part of his father upon which the counterclaim herein could be based. Although the case at bar presented the issue of the parent's negligence as a counterclaim, while the *Kohler* decision was couched as third party actions, we hold this procedural difference too insignificant to distinguish the two cases. Both seek recovery against the parent for amounts the defendants are held liable to the minor based upon an initial liability of the parent. Therefore, no foundation exists upon which the proposed counterclaims may be sought. To hold otherwise would prefer form over substance; a defendant will not be allowed to accomplish indirectly that which could

3. The remand was for the holding of further proceedings for a determination of the applicability of any exception to the doctrine of parental immunity, 600 S.W.2d at 650.

4. Prosser, Law of Torts (4th Ed. 1971), notes: "There is something of a movement on foot to

change this rule [denying contribution on account of parental immunity] and allow contribution on the ground that the immunity does not go to tort liability, but merely to suit." Prosser, § 50, at 309 (Fn. 75).

not be accomplished directly. *Martinez, supra,* at 318.

We take some solace in the fact that many learned treatises implicity bolster this position. While Prosser recognizes the minority position,[5] he states nonetheless that:

> The contribution defendant must be a tortfeasor, and originally liable to the plaintiff. If there was never any such liability, as where he has the defense of family immunity... then he is not liable for contribution.[6]

Prosser, § 50, at 309.

■ Further support is found in the Restatement of Torts, 2nd, § 886A(g) which reads:

> g. *Defenses.* If the one from whom contribution is sought is not in fact liable to the injured person, he is not liable for contribution. This is true, for example, where he has one of the immunities from liability heretofore recognized for members of plaintiff's family.... In other words, his defense cannot be circumvented by the plaintiffs recovery against another tortfeasor, followed by a suit for contribution.

Likewise, one finds the observation in 1 J. Dooley, Modern Tort Law, § 26.23 (1977) at 571 that: "Contribution is not possible where an immunity exists between the third party and the original plaintiff, because the immune party cannot be held liable to the plaintiff." Where no liability exists between plaintiff-minor and father, the same immunity precludes not only a third-party action for contribution, but a counterclaim based upon alleged liability of the parent as well. Both involve apportionment of liability between "tortfeasors." We do not believe parental immunity should be circumvented with such procedural ease.

Having held that parental immunity bars a defendant's counterclaim or impleader of a parent, absent one of the recognized ex-

ceptions to the doctrine, we need not reach the question of disqualification of the counsel representing the minor and his parents. Such contention was premised upon the validity of the counterclaims against the father, which would have, in effect, put the father and minor in an adversary position.

■ In conclusion, parental immunity remains a viable concept in Missouri with its applicability to be determined on a case by case basis. This determination is made by hearing in which evidence is presented as to the availability of one of the recognized exceptions to the doctrine. Should there be no exception, parental immunity bars any action by a defendant seeking to apportion liability with one clothed in such immunity, whether it be by impleader or counterclaim. Hence, the judgment of the trial court is affirmed.

RENDLEN and SEILER, JJ., concur.

DONNELLY, C. J., and BARDGETT, J., concur in separate concurring opinion filed.

HIGGINS, J., concurs and concurs in separate concurring opinion of BARDGETT, J.

WELLIVER, J., concurs in part and dissents in part in separate opinion filed.

DONNELLY, Judge, concurring.

The principal opinion follows the detour from *pure* relative fault first taken by the Court's majority in *Maryland Heights v. Ferriss,* 588 S.W.2d 489; and I must concur. I do so with an observation admittedly poignant: It is a fact that Rawls' principle of fairness was excised from *Whitehead & Kales* as it left the gate. Its progeny rendered it inscrutable before it had a chance to run. In my view, *Whitehead & Kales* deserved better treatment—it could have fulfilled its promise. *See Steinman v. Strobel,* 589 S.W.2d 293, 295–297 (Mo. banc 1979) (Donnelly, J., dissenting).

---

**5.** See fn. 4.

**6.** Prosser distinguishes this situation from one where liability of the contribution defendant once existed, but is subsequently discharged, such as where plaintiff's claim against the con-

tribution defendant is barred by the applicable statute of limitations, and from the situation where plaintiff releases or convenants not to sue one or more joint tortfeasors.

BARDGETT, Judge, concurring.

I concur in the principal opinion and write this concurring opinion because the dissenting portion of the opinion concurring in part and dissenting in part misstates the holdings of *Missouri Pacific Railroad v. Whitehead & Kales Co.*, 566 S.W.2d 466 (Mo. banc 1978), *Parks v. Union Carbide Corp.*, 602 S.W.2d 188 (Mo. banc 1980), *State ex rel. Victaulic Co. of America v. Meyers*, 588 S.W.2d 494 (Mo. banc 1979), *State ex rel. Maryland Heights Concrete Contractors, Inc. v. Ferriss*, 588 S.W.2d 489 (Mo. banc 1979), and specifically and most importantly *State ex rel. Tarrasch v. Crow*, 622 S.W.2d 928 (Mo. banc 1981).

In particular, Judge Welliver's opinion states:

> We held in *Tarrasch* that the plaintiff's release of one defendant did not prevent the second defendant from seeking contribution from the first.

Slip op. at 183.

It is not uncommon for lawyers and judges to consider statements in opinions ancillary to the principal opinion in a case, *i.e.*, dissents, concurring opinions, and opinions concurring in part and dissenting in part, as somewhat authoritative with respect to a prior holding. The above quotation may well lead judges and lawyers to believe that this Court has held that a party giving a release to a claimant or plaintiff can be brought into the suit by a sued defendant under *Whitehead & Kales* and become liable to the defendant or defendants who bring the released party into the case for what a jury determines to be the released party's percentage share in a judgment plaintiff obtains against the other defendants. In short, others may believe that this Court has held that a valid release will *not* be given effect so as to preclude the released party from setting up the release as a bar to any liability in the case.

This Court did not so hold in *Tarrasch* or any other case and it would be incorrect for a lawyer in advising his client or a judge in ruling on appropriate motions to so believe.

When this Court issued its preliminary writ in *Tarrasch* it was thought that the case would squarely present the question whether a released party could be implicated by a defendant for contribution under *Whitehead & Kales*. When the case was briefed and argued, it appeared that question need not be reached and it was not reached.

In the *Tarrasch* case, the relator, Dr. Tarrasch, was an ophthalmologist who treated the underlying plaintiff Kenny Hemphill for an eye injury Hemphill sustained while on a school bus being operated by the underlying defendant McVay when Hemphill was hit in the eye by a ruler thrown by the underlying defendant Durremann, a classmate of plaintiff's. Hemphill sued McVay, Durremann, and Dr. Tarrasch. McVay and Durremann filed crossclaims against Tarrasch for apportionment of damages under *Whitehead & Kales*. Tarrasch entered into an agreement and covenant not to sue with plaintiff Hemphill. The agreement is seven pages long and is summarized at 622 S.W.2d at 936. Tarrasch filed a motion to dismiss the third-party crossclaims of McVay and Durremann contending the agreement precluded him (Tarrasch) from being brought back into the case by anyone, including McVay and Durremann. The trial court indicated it would overrule Tarrasch's motion to dismiss him from the case and then Tarrasch sought an order from this Court prohibiting the trial court from overruling his motion, contending the trial court had no jurisdiction to do so.

This Court construed the agreement and covenant not to sue in the context of the extraordinary writ of prohibition with respect to whether the trial court would be acting in excess of its jurisdiction if it overruled Tarrasch's motion to dismiss him from the crossclaims and held that Tarrasch was not entitled to be dismissed *under that agreement*. This Court stated at 937:

> The agreement and covenant not to sue was entered into voluntarily, with able counsel on both sides, and there appears no reason why *it should not be enforced*. It impairs neither the rights of relator [Tarrasch] nor Durremann, and plaintiff is called upon to do no more than he

agreed to do. It is a workable settlement arrangement.

The Court also stated, at 937:

We cannot say the trial court does not have jurisdiction to overrule the relator's motion for summary judgment on the facts before us. Under the agreement and covenant not to sue, which was before the trial court as part of the pleadings, the trial court is not exceeding his jurisdiction if he permits the cross-claim to proceed in light of the agreement reached by relator and plaintiff relative to the disposition to be made of such claims against relator.

The opinion in *Tarrasch* demonstrates on its face that this Court did not hold that a release obtained by a defendant would not preclude a remaining defendant from joining the released party by way of a third-party petition under *Whitehead & Kales.* To the contrary, in *Tarrasch* we gave effect to the agreement Tarrasch entered into with the plaintiff in the underlying damage suit.

Nowhere in *Whitehead & Kales* did this Court say or imply that a released party could be brought into the case by a nonreleased defendant and be subject to a contribution judgment, nor was it suggested that "fairness" required any such result. Nor did *Whitehead & Kales* suggest or imply that a sued defendant be liable to *plaintiff* for only that limited portion of *plaintiff's* damages that the percentage of negligence of the sued defendant theoretically caused. To the contrary, it was specifically stated:

In either instance the ability of a plaintiff to sue and ultimately collect judgment against his or her choice of tortfeasor need not be impaired. *Plaintiff continues free to sue one or more concurrent tortfeasors as he sees fit and nothing that transpires between them as to their relative responsibility can reduce or take away from plaintiff any part of his judgment.* Concurrent or joint tortfeasors not sued by plaintiff, however, may now be brought in by third party practice for a determination in due course of their relative part of the responsibility, if such

is the case, for the overall injury and damage to the plaintiff. A jury in the same or separate trial at the discretion of the trial court, § 507.040, RSMo 1969; rule 52.11(a); rule 66.02, should be charged with the responsibility for determining a relative distribution of fault and liability for the damages flowing from a tort, which damages will be, along with a finding of negligence, the predicate to apportionment. *The interests of plaintiffs are secure* ; the interests of joint or concurrent tortfeasors will now be clothed in a rule based upon realism and fairness between them.

566 S.W.2d at 474–75 (emphasis added) (footnote omitted).

The clear impact of Judge Welliver's opinion in this case is that this Court should abolish the rule of law that a joint or concurrent tortfeasor (Sears, Roebuck & Co. and Roper Corp.) is liable for all of the damages *to plaintiff* if that tortfeasor's negligence or fault was a proximate cause of *plaintiff's* damages. Although *Whitehead & Kales* seems to be the authority relied upon for that proposition, the fact is that to do so would be contrary to the explicit holding of this Court in *Whitehead & Kales,* as set forth supra.

In sum, it is simply incorrect to say that in *Tarrasch* or any other case this Court has authorized or approved the concept that a defendant may, by third-party petition, under *Whitehead & Kales,* bring a released party into the suit.

WELLIVER, Judge, concurring in part and dissenting in part.

I concur in the principal opinion's holding that we should "decline appellants' invitation to abrogate parental immunity outright." Abolition of the doctrine would encourage family dischord, undermine parental discipline and control, and inundate our already overburdened courts with a flood of unnecessary litigation.

I dissent from the principal opinion's result insofar as it prevents appellants from making the minor respondent's father a

party to the lawsuit for the limited purpose of determining his—and thus appellants'—relative fault. We have retreated from our holding in *Missouri Pacific Railroad v. Whitehead & Kales Co.*, 566 S.W.2d 466 (Mo. banc 1978), virtually from the day it was announced. *See Parks v. Union Carbide Corp.*, 602 S.W.2d 188 (Mo. banc 1980); *State ex rel. Victaulic Co. of America v. Meyers*, 588 S.W.2d 494 (Mo. banc 1979); *State ex rel. Advanced Circuitry Division, Litton Systems, Inc. v. Powell*, 588 S.W.2d 493 (Mo. banc 1979); *State ex rel. Maryland Heights Concrete Contractors, Inc. v. Ferriss*, 588 S.W.2d 489 (Mo. banc 1979). Today's decision is but another step backward.

*Whitehead & Kales* recognized the principle of fairness that "one tortfeasor is ultimately liable only for the amount of damages that he caused." *Parks*, 602 S.W.2d at 201 (Welliver, J., dissenting). That principle deserves more than mere lip service. The refusal to allow an action against the minor respondent's father "for the purpose of comparing [his] fault is inconsistent with the general principles announced in *Whitehead and Kales*." *Steinman v. Strobel*, 589 S.W.2d 293, 295 n.3 (Mo. banc 1979) (Welliver, J., concurring).

"The proportion of the [minor respondent's] injury that was caused by the [father's] negligence should be determined by the jury, so that the judgment entered against the [appellants] will reflect only that portion of damages for which [they are] responsible." *Parks*, 602 S.W.2d at 201–02 (Welliver, J., dissenting). This comports with the requirement we made with respect to releases in *State ex rel. Tarrasch v. Crow*, 622 S.W.2d 928 (Mo. banc 1981). We held in *Tarrasch* that the plaintiff's release of one defendant did not prevent the second defendant from seeking contribution from the first. *Id.* at 935. The release protected the first defendant from further liability, but the second was forced to pay only his proportionate share of the damages. *Id.* at 937. The principle of fairness underlying *Whitehead & Kales* demands the same result in this case. Parental immunity bars a suit for *damages* against the father, but that

does not make it necessary that we narrow the application of the *relative fault* concept in this case. The *relative fault* of [appellants] against which there is no legal bar to judgment should still be determined.... [A] pure concept of *relative fault* requires that the right of a claimant to recover from one tortfeasor be determined in accordance with a jury's finding of the respective percentages of fault as between *all* tort-feasors.

*Maryland Heights*, 588 S.W.2d at 492 (Donnelly, J., dissenting). Given our holding in *Tarrasch*, any other result would lead only to more uncertainty for both the courts and attorneys of this state. The trial court's order should be reversed and the case remanded for further proceedings consistent with the rule requiring apportionment of liability in direct relation to the degree of fault.