Richard WHITE, Michelle White, and Michael White, Plaintiffs/Respondents,

v.

Lynn WHITE, Defendant/Appellant.

No. 73696.

Missouri Court of Appeals, Eastern District, Division One.

Nov. 24, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 18, 1999.

Application for Transfer Denied March 23, 1999.

Anthony F. Vaiana, Chesterfield, MO, for appellant.

James P. Holloran, Thomas Lee Stewart, St. Louis, MO, Matthew B. Woods, Columbia, MO, for respondents.

CRANDALL, Judge.

Defendant, Lynn White, appeals from the judgment, entered in a court-tried case, in favor of plaintiffs, Richard White, Michelle White, and Michael White, in an action for personal injuries sustained in an automobile accident which occurred when plaintiffs were passengers in a vehicle driven by defendant, their mother. We affirm.

On May 29, 1985, defendant, Lynn White, and Peter White, husband and wife, were the parents of Richard, Michelle, and Michael. On that date, Lynn White was driving an automobile furnished to Peter White by his employer, Fieldcrest Cannon. She was returning to the St. Louis area after spending a holiday weekend at the Lake of the Ozarks, where she and her husband had entertained customers on behalf of Fieldcrest Cannon. Richard (then 14 years of age) and Michelle and Michael (then both 10 years of age) (hereinafter children) were passengers in the vehicle. Lynn White fell asleep and the vehicle went off the road.

The injuries sustained by the children in the accident were extensive, requiring long hospitalizations. In addition to a dislocated hip, multiple fractures and lacerations, Michael sustained severe head trauma and later underwent six surgeries to his brain. His injuries left him permanently brain damaged and prone to seizures. Michelle suffered a broken leg and a dislocated hip. Richard suffered a fractured right hip, a dislocated left hip, a fractured jaw, fractured ribs, a herniated disk, and lacerations to his face and eyelid. He underwent three separate operations to correct his injuries.

On July 15, 1996, after they had reached the age of majority, children brought the present action against Lynn White and Fieldcrest Cannon. Defendants moved for summary judgment on the basis that children's claims were barred by the doctrine of parental immunity in effect at the time of the accident. *See, e.g., Kendall v. Sears, Roebuck and Co.,* 634 S.W.2d 176 (Mo. banc 1982). The trial court held a hearing to determine the applicability of the doctrine. Following the hearing, the court concluded that the instant action would not disrupt the family harmony. Children then dismissed

their claims against Fieldcrest Cannon. The claim against Lynn White was submitted to the trial court on evidence adduced and stipulated to by the parties. The trial court entered judgment in favor of children in the amounts as follows: $150,000.00 each to Michelle and Richard and $1,700,000.00 to Michael.

The dispositive issue on appeal is whether the parental immunity doctrine applies to the case before us, such that children are barred from bringing the present action against their mother.

In *Hartman by Hartman v. Hartman*, 821 S.W.2d 852 (Mo. banc 1991), the Supreme Court of Missouri abrogated the parental immunity doctrine which had been judicially created in *Baker v. Baker*, 364 Mo. 453, 263 S.W.2d 29 (1953). *Hartman* authorized minor unemancipated children to bring actions sounding in negligence against their parents and adopted the reasonable parent standard. *Hartman*, 821 S.W.2d at 858. The court noted that the doctrine, taken to its logical conclusion, had the effect of causing a parent to have a greater duty to the general public than to his or her own child. *Id.* at 855. The court, however, specified that its ruling was prospective in application. *Id.* at 858.

Because the accident in the instant action occurred prior to *Hartman*, that decision does not apply. We therefore examine the present case in light of the law in existence before *Hartman*.

*Kendall*, 634 S.W.2d at 176, represented the state of the law pre-*Hartman*. *See Hartman*, 821 S.W.2d at 854. *Kendall* held that the parental immunity doctrine remained a viable concept in Missouri, with its applicability to be determined on a case by case basis. *Kendall*, 634 S.W.2d at 178. *Kendall* instructed trial courts to conduct an evidentiary hearing to determine the availability of one of the recognized exceptions to the parental immunity doctrine. *Id.*

In adopting the case-by-case approach, *Kendall* relied on *Fugate v. Fugate*, 582 S.W.2d 663 (Mo. banc 1979). *Kendall*, 634 S.W.2d at 178. In *Fugate*, the court reaffirmed its holding in prior cases that parental immunity would not apply, among other rea-

sons, "if the maintenance of the suit would not 'seriously disturb the family relations.' " *Fugate*, 582 S.W.2d at 667 (quoting *Brennecke v. Kilpatrick*, 336 S.W.2d 68, 70 (Mo. banc 1960)). The court focused on the role of the court in determining whether to apply the parental immunity rule:

> Whenever the courts examine public policy underlying the doctrine of parental immunity, the primary objective must be to decide the issues in the best interests of the family unit as it is that domestic establishment that is the subject of the public policy underlying parental immunity. Our society has evolved around the nucleus of the family unit. It is the family which produces and nurtures continuing generations of individuals from whom the fabric of society is formed. There are a number of circumstances which from time to time result in disharmony or destruction of family relations and on occasion the claim of an individual right appears to run contrary to the interest of the family unit. On such occasions the courts are called upon to balance conflicting interests and determine as nearly as possible for the greater good. The court has taken the position that public policy in the preservation of family harmony wherever possible justifies maintaining the doctrine of parental immunity in appropriate circumstances.

*Id.* at 668.

Thus, it was the recognized practice prior to *Hartman* for the trial court to hold an evidentiary hearing to determine whether the legal proceedings would disrupt family harmony or subvert parental control and discipline. *See, e.g., Kendall*, 634 S.W.2d at 179 (after an evidentiary hearing the trial court found that unemancipated son was not entitled to bring action against father for the negligent operation of a lawnmower because there would be a disruption of family tranquility); *Fugate*, 582 S.W.2d at 664 (at the evidentiary hearing, evidence indicated there had been no disruption in the harmonious relationship between divorced, non-custodial father and unemancipated daughter because of the filing of an action for the wrongful death of the custodial mother while a passenger in father's automobile); *Bahr v. Bahr*,

478 S.W.2d 400, 402 (Mo.1972) (action by daughter against divorced, non-custodial father for injuries sustained while under his control remanded for daughter to present evidence to show that she was unemancipated and that the action would not seriously disturb the family relations).

Defendant focuses on the particular facts of pre-*Hartmann* cases where courts declined to apply the parent immunity doctrine and argues that the present action is barred because it does not fall within one of those fact patterns. *See, e.g., Fugate,* 582 S.W.2d at 663 (action against non-custodial parent following a divorce); *Brennecke,* 336 S.W.2d at 68 (action against deceased parent); *Wurth v. Wurth,* 322 S.W.2d 745 (Mo. banc 1959) (action by emancipated minor). We reject defendant's attempt to narrow the standard by advocating that parental immunity bar all actions where the facts do not fall within one of the exceptions listed above. Rather, we apply the law as it was enunciated in those cases. That law clearly indicates that the trial court, after an evidentiary hearing, should determine whether or not the legal proceedings would result in disharmony or destruction of family relations.

Turning to the facts of the case before us, at the evidentiary hearing, defendant-mother and father, as well as Richard, testified that there was not, nor would there be in the future, disruption in family harmony if children were allowed to bring the present action. In declining to apply the parental immunity doctrine, the trial court concluded:

> The accident and its ramifications, including this lawsuit, have never threatened harmonious family relations in the past and would not threaten family relations in the future. There is no basis on which to conclude that any aspect of the accident has been or will be detrimental to the family unit. If anything, the accident and its resulting adversity have brought the family closer together.

Thus, the trial court found, based on substantial evidence, that the lawsuit would have no adverse impact on the relations between family members; and accordingly, there was no public policy justification for invoking the doctrine as a bar to the present action.

The judgment of the trial court is affirmed.

ROBERT G. DOWD, JR. C.J., and CLIFFORD H. AHRENS, J., concur.