CATHY LOU BAKER, a MINOR, by Next Friend, NADEANE BAKER, Appellant, v. GEORGE BAKER, Respondent, No. 43623—263 S. W. (2d) 29.

Division Two, December 14, 1953.

*A. H. Maus* and *Edward V. Sweeney* for appellant.

454

*M. J. McQueen* for respondent.

WESTHUES, C.—Cathy Lou Baker, a minor, 15 months old, by her next friend, Nadeane Baker, her mother, filed this suit against her father, defendant George Baker, to recover $15,000 damages for personal injuries alleged to have been sustained while her father in backing his car out of the driveway at the home negligently backed the car into and upon the body of Cathy Lou. It was alleged in the petition that the defendant was fully insured with M. F. A. Mutual

Insurance Company for any liability and any judgment against the defendant would have to be paid by the insurer.

Plaintiff's petition charged that defendant's car was parked in a driveway in the yard at the family home; that plaintiff was near the car, was able to walk, and frequently and habitually followed her father, the defendant; that plaintiff greatly enjoyed riding in the car and would make an effort to go along whenever the car was taken; that defendant knew all of these facts and knew of plaintiff's presence; that the *defendant negligently backed the car and injured plaintiff.

The defendant filed a motion to dismiss the petition on the ground that it failed to state a claim on which relief could be granted. The trial court sustained this motion and plaintiff appealed.

The basic question presented is whether an unemancipated child may maintain an action in tort against its parents. The general rule, without doubt, is that such a child may not sue the parent in tort. 67 C.J.S. 787, Sec. 61 (2); 39 Am. Jur. 735, Sec. 90; 20 R.C.L. 631.

The two principal reasons assigned for denying the child a right to sue are that under the common law no such action could be maintained and that such suits are against public policy for the reason that to permit such actions would disturb the family relationship.

To say a child may not sue its parent in tort is stating the rule too broadly. Many cases may be found where such suits have been permitted. We also find extreme views on the subject. For example, in the case of Hewlett v. George, 68 Miss. 703, 9 So. 885, a mother wrongfully and maliciously caused her minor child to be confined in a hospital for the insane. The court held that an unemancipated child could not maintain an action in tort against its parent. In Roller v. Roller, 37 Wash. 242, 79 P. 788, the court held no tort action of a child could be permitted against a parent and denied the child redress even though the action was for damages sustained by the child as a result of forcible rape by the father.

The above holdings have been severely criticized in many subsequent cases and not without reason. See Cowgill v. Boock, 189 Or. 282, 218 P. (2d) 445, 19 A.L.R. (2d) 405, and the Annotations beginning at page 423. See also Borst v. Borst, 251 P. (2d) 149, where the Supreme Court of Washington en banc overruled the case of Roller v. Roller, supra. In the Borst case, the court held that a minor child could maintain a tort action against its father. The circumstances were that the father was in business which required the use of a truck; while operating a truck for business, he ran over his own child who was playing in the street. The court based its decision on the theory that the father at the time the child was injured was not discharging any parental duties. The court, however, held that while parents are discharging parental duties, the cloak of immunity protects them from

456

suits in tort by the minor children. The court (251 P. (2d) 156) had the following to say:

"Nevertheless, there do exist, in our opinion, some factors and considerations in connection with the parent-child relationship which justify some immunity of the parent to suit. If those factors and considerations are properly identified and understood, the appropriate scope of the immunity rule will become apparent.

"Parenthood places a grave responsibility upon the father and mother. It is their duty to rear and discipline the child. In rearing the child, the parents must provide a home and perform tasks around the home and on the premises. In most cases it is necessary or convenient to provide a car for family transportation.
\* \* \*

"In order that these parental duties may adequately be performed, it is necessary that the parents be not subject to the risk of suit at the hands of their children. If such suits were commonplace, or even possible, the freedom and willingness of the father and mother to provide for the needs, comforts and pleasures of the family would be seriously impaired. Public policy therefore demands that parents be given immunity from such suits while in the discharge of parental duties."

In Cowgill v. Boock, supra, liability was sustained where a father had ordered his minor son to ride in a car operated by the father; the car was driven over a cliff and both the father and son were killed. The court, in holding the administrator of the child's estate could maintain an action against the father's estate, based its decision on the theory that the conduct of the father was more than mere negligence. Note what the court said at page 412, 19 A.L.R. (2d), Headnote 12: "In our opinion the decedent-father was guilty of wilful misconduct." The evidence was that the father was intoxicated and very boisterous. Again, at page 414, Headnote 14, the court said, "We appreciate full well that it is a wholesome rule and that it should be the policy of the law to preserve and maintain the security, peace and tranquility of the home, which indeed is the very foundation upon which our government rests. It is unthinkable that a parent, while acting within the scope of domestic relations, should be brought into court to defend ▆ against every unintentional personal tort that might be committed against a minor child."

In Dunlap v. Dunlap, 84 N.H. 352, 150 A. 905, 71 A.L.R. 1055, liability was based on the theory that when the child was injured, the relationship of master and servant existed.

It will be noted that in all of the cases above-mentioned the courts recognized the rule of law that a parent is not liable to an unemancipated child for injuries sustained by the child through the negligence of the parent while acting within parental authority or duty.

In Borst v. Borst, supra, the father was on a business venture. In Cowgill v. Boock, supra, the tort was wilful and malicious, and in Dunlap v. Dunlap, supra, the relation was master and servant and not parent and child.

We do not have any of these exceptions in the case under consideration. At the time the child (plaintiff) was injured, the father was attempting to back the family car off the home premises. The petition contains no allegation indicating that the unfortunate occurrence was caused by anything more than mere negligence. In such a situation, we are of the opinion that the rule of immunity must be applied. As indicated in the case of Borst v. Borst, supra, wherein the court in speaking of a father's duties, said, "In most cases it is necessary or convenient to provide a car for family transportation." Plaintiff alleged in her petition "that plaintiff greatly enjoyed riding in defendant's automobile."

Plaintiff cited Wells v. Wells, 48 S.W.(2d) 109, wherein the Kansas City Court of Appeals held a mother could maintain an action against her minor child in tort. The case grew out of negligence on the part of the minor in driving an automobile in which the mother was riding. The court based its decision on the case of Dix v. Martin, 171 Mo. App. 266, 157 S.W. 133, and other cases involving more than mere negligence. In the Dix case, supra, the defendant claimed immunity on the ground that at the time of the minor's injuries, she was acting in loco parentis. However, the cause of action was based on a wilful assault. Note how the court characterized the action of the defendant in that case (157 S.W. 136):

"The evidence shows beyond question that defendant, in her furious wrath over what amounted to nothing more than a breach of decorum, subjected the child to an unusual form of punishment of such severity and brutality as to shock the conscience of any reasonable and humane person. State v. Koonse, 123 Mo. App. 655, 101 S.W. 139. The assault was wicked and criminal, and, assuming that defendant stood in the relation of a parent to plaintiff, she should answer for the damages resulting from such excessive punishment."

That case does not sustain the holding in the Wells case, supra. After the Wells case was decided, the Springfield Court of Appeals, in the case of Cook v. Cook, 232 Mo. App. 994, 124 S.W.(2d) 675, held that a minor child could not sue its parent for damages for an assault even though the assault was a wanton and malicious striking with a riding whip. The court did not mention the Wells case, but cited the Dix case, supra, holding the Dix case was not authority for the reason that in the Dix case, the defendant did not stand in the position of a parent. The court based its ruling on the broad rule that an unemancipated minor child cannot sue its parents in a tort action. The court cited and quoted from Mannion v. Mannion, 3 N.J. Misc. 68, 129 A. 431,

42 A.L.R. 1363. Other interesting cases on the subject are Luster v. Luster, 299 Mass. 480, 13 N.E.(2d) 438; Securo v. Securo, 110 W. Va. 1, 156 S.E. 750; Elias v. Collins, 237 Mich. 175, 211 N.W. 88, 52 A.L.R. 1118; Redding v. Redding, 235 N.C. 638, 70 S.E.(2d) 676; Wright v. Wright, 85 Ga. App. 721, 70 S.E.(2d) 152.

In no case cited and reviewed has a court held that an unemancipated minor child may recover in a tort action against its parents where the action is based on mere negligence. In each case where a suit by a child against a parent was maintained, the court found some reason to make an exception. For example, the situations presented wilful, malicious conduct, master and servant relationship, or parent engaged in business venture. We, by this opinion, do not intend to approve or disapprove any of the particular cases referred to in this opinion. What we do hold is that plaintiff's suit in this case cannot be maintained for the reason that to do so would be against public policy. Such a ruling is supported by all of the authorities above cited.

The second question presented is, does the fact that the defendant was insured make any difference? We rule that it does not. There are cases which hold that insurance does remove the immunity. For cases so holding, see 67 C.J.S. Sec. 61, p. 789. Many other cases rule that nonliability is not affected by insurance. See Lund v. Olson, 183 Minn. 515, 237 N.W. 188; Elias v. Collins, supra; Segall v. Ohio Casualty Co., 224 Wis. 379, 272 N.W. 665, 110 A.L.R. 82.

In this state, we have ruled that insurance carried by a charitable institution does not change the state's public policy of nonliability of such institutions in tort actions. See Dille v. St. Luke's Hospital, 355 Mo. 436, 196 S.W.(2d) 615, in which the question was considered at length. That ruling applies to the case before use.

The trial court correctly ruled in dismissing plaintiff's petition.

The judgment is affirmed. *Bohling* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.