Christine HARTMAN, a minor, By her mother and next friend, Sheila HARTMAN,

and

Todd Hartman, a minor, By his mother and next friend, Sheila Hartman, Plaintiffs–Appellants,

v.

William R. HARTMAN and William E. Hartman, Defendants–Respondents.

Tracy ARMSTRONG, a minor, By her father and next friend, Michael ARMSTRONG,

and

Michael Armstrong, Plaintiffs–Appellants,

v.

Mary ARMSTRONG, Defendant–Respondent.

Nos. 73514, 73568.

Supreme Court of Missouri, En Banc.

Dec. 17, 1991.

Mark I. Bronson, St. Louis, Michael W. Manners, Steven W. White, Independence, for plaintiffs-appellants.

Robert H. Pedroli, Dennis C. Burns, John Singleton, St. Louis, John B. Reddoch, Scott J. Sullivan, Liberty, for defendants-respondents.

APPEALS CONSOLIDATED

COVINGTON, Judge.

The Court has consolidated for opinion two cases in which the appellants request re-examination of the parental immunity doctrine articulated in *Baker v. Baker*, 364 Mo. 453, 263 S.W.2d 29 (1953). In both cases the trial courts dismissed the actions brought by minor children against their parents. Finding insufficient basis to retain the doctrine, this Court reverses the judgments of the trial court and remands the cases for further proceedings.

I.

In the Hartman case, Christine and Todd Hartman, by their mother and next friend, Sheila Hartman, filed an action in the Circuit Court of Jefferson County against

their father, William E. Hartman, and their grandfather, William R. Hartman, for personal injuries suffered while on vacation near Climax Springs, Missouri. The minor children allege in their petition that their father and grandfather negligently maintained and operated a propane gas stove and propane tank causing them to explode, thereby injuring the children.

The father filed a motion for summary judgment on the children's petition, asserting that the parental immunity doctrine prevented a minor unemancipated child from bringing a negligence action against a custodial parent. The grandfather filed a motion to dismiss and a motion to quash service for lack of venue, asserting that since venue was proper in Jefferson County solely because it was the residence of the father, venue would no longer exist to sustain the action against the grandfather in Jefferson County, under § 508.010(1)(2), RSMo 1986, if the father's action were dismissed.

The trial court sustained the father's motion for summary judgment and the grandfather's motion to dismiss and motion to quash service. Following the holding of *Baker*, the Missouri Court of Appeals, Eastern District, affirmed the trial court. This Court granted transfer.

In the Armstrong case, plaintiffs' second amended petition alleges that Mary Armstrong's vehicle stalled while she was crossing the Missouri River on the I-435 bridge in Kansas City. Mary Armstrong's unemancipated minor children, Tracy and Michael, Jr., attempted to push the car off the bridge. According to the averments, the children were struck by a van operated by Jeffrey Tiller. As a result of the collision, Tracy sustained severe injuries and Michael, Jr., died.

Tracy, by her next friend and father Michael Armstrong, filed suit in the Circuit Court of Clay County against Mary Armstrong, Jeffrey Tiller, and American Family Insurance. Michael Armstrong on his own behalf filed suit against the same defendants for the wrongful death of Michael, Jr. Appellants claim that the negligence of Mary Armstrong and Tiller com-

bined to cause the death of Michael, Jr., and injuries to Tracy. They further claim that Tiller's van was an uninsured motor vehicle within the coverage afforded by American Family to the Armstrongs on their vehicle.

Mary Armstrong filed a motion to dismiss for failure to state a cause of action. She asserted that the parental immunity doctrine bars Tracy's negligence action and Michael's action for the wrongful death of his son. The trial court sustained the motion, citing *Baker*. Pursuant to *Rule 74.-01(b)*, the trial court decreed that the order granting dismissal was a final judgment and appealable and that there was no just reason for delay. The appellants appealed to the Missouri Court of Appeals, Western District. This Court granted transfer prior to opinion by the court of appeals.

## II.

The first issue for decision in each case is the efficacy of the parental immunity doctrine in Missouri. Prior to 1891 no reported cases in the United States applied the doctrine. *See Brennecke v. Kilpatrick*, 336 S.W.2d 68, 70 (Mo. banc 1960). The first recorded application of the doctrine, a product of judicial policy making without common law basis, was in Mississippi in *Hewellette v. George*, 68 Miss. 703, 9 So. 885 (Miss.1891). The *Hewellette* court grounded its decision in the need to preserve family harmony. *Hewellette*, 9 So. at 887.

A Missouri court first recognized and applied the doctrine of parental immunity in *Cook v. Cook*, 232 Mo.App. 994, 124 S.W.2d 675 (1939), in which the Springfield Court of Appeals held that a fifteen-year-old unemancipated child could not sue her adoptive mother for assault for the reason that the child was unemancipated. *Cook*, 232 Mo.App. at 997, 124 S.W.2d at 677. *Cook* stood in conflict with *Wells v. Wells*, 48 S.W.2d 109 (Mo.App.1932), in which the Kansas City Court of Appeals recognized causes of action between parents and unemancipated children. *Wells*, 48 S.W.2d at 111. This Court resolved the conflict between *Wells* and *Cook* in 1954 in *Baker v.*

*Baker,* 364 Mo. 453, 263 S.W.2d 29 (1953), holding that a fifteen-month-old infant could not sue her father for negligent operation of an automobile. *Baker,* 364 Mo. at 458, 263 S.W.2d at 31–32. The decision was grounded in the interest in preserving family harmony.

The history of parent-child immunity in Missouri is, therefore, brief, and *Baker* represents the outer perimeter. In *Wurth v. Wurth,* 322 S.W.2d 745 (Mo. banc 1959), the Court declined to extend the rule of parental immunity to emancipated minors. *Wurth,* 322 S.W.2d at 747. Since *Wurth,* Missouri courts have continued to limit application of the doctrine. In *Brennecke v. Kilpatrick,* 336 S.W.2d 68 (Mo. banc 1960), this Court refused to grant immunity to the estate of a deceased parent, acknowledging that the rationale for the immunity, preservation of family harmony, expired with the parent's death. Under the same reasoning, apparently not recognizing the possibility of a harmonious family relationship in a post-dissolution setting, this Court in *Fugate v. Fugate,* 582 S.W.2d 663 (Mo. banc 1979), held exempt from immunity a noncustodial parent. *Id.* at 669. Finally, in *Kendall v. Sears, Roebuck, and Co.,* 634 S.W.2d 176 (Mo. banc 1982), the Court held that the application of the parental immunity doctrine should be made on a case by case basis. *Kendall* instructs trial courts to conduct an evidentiary hearing to determine the availability of one of the recognized exceptions to the immunity doctrine as enunciated in *Wurth, Brennecke,* or *Fugate. Kendall,* 634 S.W.2d at 180. Otherwise, "parental immunity bars any action by a defendant seeking to apportion liability with one clothed in such immunity." *Id.* In evaluating the decisions since *Baker,* it becomes clear that this Court has engaged in a piecemeal abrogation of the immunity.

In further evaluation of the law of Missouri since *Baker,* it is important to note that the legislature has acted in at least two areas that relate to the questions presented here: (1) mandatory insurance, § 303.025, RSMo 1986, and (2) a standard by which parental conduct may be judged. § 211.185, RSMo Supp.1990. The first relates to the inappropriateness of retaining the immunity or some form of it. The second is relevant to the proper approach to adopt in the event of abrogation of the immunity. Each will be addressed, *infra,* in the context to which it is most closely related.

Determining whether to abrogate, retain, further modify, or carve yet additional exceptions to the doctrine requires reconsideration of the policy underpinning the immunity, which is an exception to the general rule of tort liability. In Missouri the adoption of the immunity rested primarily upon the need to "preserve and maintain the security, peace and tranquility of the home...." *Baker,* 364 Mo. at 456, 263 S.W.2d at 30 (quoting *Cowgill v. Boock,* 189 Or. 282, 218 P.2d 445, 451–52 (1950)). Once adopted, it was feared that abrogation of the doctrine would "either disrupt the tranquility of the domestic establishment or subvert parental control or discipline." *Brennecke,* 336 S.W.2d at 70. In *Fugate* this Court noted that the public policy interest in the preservation of family harmony justified maintaining the doctrine of parental immunity "in appropriate circumstances." *Fugate,* 582 S.W.2d at 668.[1]

Re-examination of the significant interest in avoiding disruption of family harmony reveals that the interest exists in tension with the consequences of the sometimes brutal application of the doctrine, which bars an injured party's right to recover for injuries. In certain circumstances family harmony may be jeopardized by disallow-

---

**1.** Other jurisdictions have considered additional reasons for adoption of the parental immunity doctrine: depletion of family assets in favor of the claimant at the expense of other children in the family; the possibility of inheritance by the parent of the amount recovered in damages by the child; the danger of fraud and collusion between parent and child; the analogy to interspousal immunity; the immunity of the domes-

tic government; and the need for parental control and discipline. *Wagner by Griffith v. Smith,* 340 N.W.2d 255, 256 (Iowa 1983). A majority of jurisdictions, however, premised adoption of the doctrine, as did Missouri, upon the belief that allowing children to sue their parents would disturb the unity and harmony of the family.

ing compensation for a child injured by the negligent act of a parent. As the Supreme Court of Hawaii noted in *Petersen v. City and County of Honolulu*, 51 Haw. 484, 462 P.2d 1007 (1969), "[w]e think that when a wrong has been committed, the harm to the family relationship has already occurred; and to prohibit reparation can hardly aid in restoring harmony." *Petersen*, 462 P.2d at 1009. Taken to its logical conclusion, the doctrine has the effect of causing the parent to owe a greater duty to the general public than to his or her own child.

The premise supporting application of the doctrine is also called into question when weighed against the fact that the immunity applies only to actions for negligence in which unemancipated children are involved. Missouri courts have recognized causes of action between parent and child in property matters, *Fugate*, 582 S.W.2d at 666, n. 3 (citing *State ex rel. Festor v. Staed*, 143 Mo. 248, 45 S.W. 50 (1898)), in which, as noted by one commentator, "[i]t is common knowledge that some of the most acrimonious family disputes have arisen...." McCurdy, *Torts Between Persons in Domestic Relation*, 43 Harvard L.Rev. 1030, 1075 (1930). There is no bar to suits by emancipated children against their parents. *Wurth*, 322 S.W.2d at 746–47.

The weight afforded the policy of preserving family harmony is also diminished by recognition that significant erosions of intra-family immunity have occurred in the area of the marital relationship. Expressing a close connection between the parental immunity doctrine and the spousal immunity doctrine, other jurisdictions have abolished one after abolishing the other. *Hebel v. Hebel*, 435 P.2d 8, 9 (Alaska 1967); *Gibson v. Gibson*, 3 Cal.3d 914, 92 Cal.Rptr. 288, 479 P.2d 648, 651 (1971); *Rigdon v. Rigdon*, 465 S.W.2d 921, 922 (Ky.1971); *Black v. Solmitz*, 409 A.2d 634, 638–39 (Me.1979); *Plumley v. Klein*, 388 Mich. 1, 199 N.W.2d 169, 172 (1972); *France v. A.P.A. Transport Corp.*, 56 N.J. 500, 267 A.2d 490, 491–92 (1970); *Elam v. Elam*, 275 S.C. 132, 268 S.E.2d 109, 111 (1980); *Goller v. White*, 20 Wis.2d 402, 122 N.W.2d 193, 196 (1963). It is worthy of mention that the common law has never treated children as extensions of their parents nor considered parents and children to be a single legal entity, as the common law has considered husband and wife. Analogy to spousal immunity is appropriate, however, in the context of reevaluation of family harmony concerns.

In 1986 Missouri rejected the family harmony rationale as it applied to interspousal immunity. In *Townsend v. Townsend*, 708 S.W.2d 646, 650 (Mo. banc 1986), this Court abrogated the spousal immunity doctrine with respect to personal injury actions arising from intentional tort. In *S.A.V. v. K.G.V.*, 708 S.W.2d 651, 653 (Mo. banc 1986), this Court simultaneously abrogated the doctrine in negligence actions. *Townsend* acknowledged the competing concerns and concluded:

> We [cannot] foresee that personal injury suits between spouses will be any more damaging to marital harmony than the multiplicity of property and contract actions currently permitted. Indeed, to frustrate recovery where warranted arguably contributes to violent domestic disturbances.

708 S.W.2d at 650. In *S.A.V.*, the negligence action, deference was given to the ability of courts "to examine and on a case-by-case basis define or adjust the duty of care required between married persons to accommodate the 'give-and-take' of married life." 708 S.W.2d at 653. There appears no more defensible reason to divest courts of a similar ability in negligence actions involving parents and their unemancipated minors.

In retrospect, the interest in avoiding disruption of family harmony, while not insignificant, appears in the weighing to be less significant than the interest in the right of an injured child to recover for injuries, particularly when Missouri recognizes all other forms of intra-family liability and applies the immunity only to actions in negligence involving unemancipated minors. It is also apparent that the ever-increasing number of exceptions, which reflect the fault of the doctrine, will eventual-

ly engulf the rule. The preferred course is to abrogate the doctrine in its entirety.

### III.

■ What remains of concern, however, is the interest in avoiding subversion of parental care, control, and discipline. *See Brennecke,* 336 S.W.2d at 70. In view of this interest, the question becomes whether the need to preserve parental prerogatives regarding child rearing justifies barring all suits for negligence between child and parent. This Court believes not. Parents should not be permitted to exercise parental prerogatives completely without concern for liability. It is uncontrovertible, however, that parents must be able to exercise a great degree of discretion in control over the relationship with their child.

In acknowledging that the doctrine of parental immunity, perhaps too hastily adopted, is difficult to justify, other jurisdictions have retained various exceptions to tort liability as a means of protecting the integrity of the parent's right and ability to exercise independent judgment in raising a child. While the majority of courts that have recently reevaluated the parental immunity doctrine have decided that some form of abrogation is warranted, courts have not reached a clear consensus regarding whether there is a standard of care required of parents or whether a limited immunity should be retained. In forming Missouri's response to the question, this Court looks for guidance to the expressions of public policy on related subjects as enunciated by the legislature, as well as to principles of fairness and considerations of simplicity in application of the standard.

A review of other jurisdictions' efforts is instructive. One approach to parental immunity attempts to ensure that suits between parent and child will never engender familial discord by retaining immunity except to the extent of the parent's insurance. *See Ard v. Ard,* 414 So.2d 1066, 1067–70 (Fla.1982). An approach that takes into account the presence of liability insurance furthers the public policy enunciated by the Missouri legislature in requiring motor vehicle liability insurance, § 303.025, the pur-

pose of which is to afford a means of redress for damages. Formulation of different rules for the insured and uninsured, however, is not justified. *See Rousey v. Rousey,* 528 A.2d 416, 419–21 (D.C.1987) (en banc); Marcolin, *Rousey v. Rousey: The District of Columbia Joins The National Trend Toward Abolition Of Parental Immunity,* 37 Cath.U.L.Rev. 767, 786 (1988). Furthermore, such a limited approach in Missouri would constitute an addition to the ever-lengthening list of exceptions to the immunity, thereby advancing the undesirable effects of piecemeal abrogation.

Other jurisdictions have abrogated parental immunity and substituted approaches that they believe adequately protect the family unit without unduly denying unemancipated minors a tort remedy. The first attempt at reform was undertaken by the Supreme Court of Wisconsin in 1963, which held that parental immunity was abrogated except: "(1) where the alleged negligent act involves an exercise of parental authority over the child; and (2) where the alleged negligent act involves an exercise of ordinary parental discretion with respect to the provision of food, clothing, housing, medical and dental services, and other care." *Goller v. White,* 20 Wis.2d 402, 122 N.W.2d 193, 198 (1963); *See also Wagner by Griffith v. Smith,* 340 N.W.2d 255, 256 (Iowa 1983); *Plumley v. Klein,* 388 Mich. 1, 199 N.W.2d 169, 172–73 (1972); *Rigdon v. Rigdon,* 465 S.W.2d 921, 923 (Ky.1971).

There has been sufficient time since *Goller* for its standards to have been tested and critiqued. The principal difficulty with the *Goller* approach has been found to be that the exceptions are vague; courts are forced to make arbitrary distinctions regarding whether the parental conduct at issue fits within one of the exceptions. *See* Falk, *Lee v. Mowett Sales Co.: North Carolina Retains Its Partial Parent–Child Immunity Doctrine,* 65 N.C.L.Rev. 1457, 1470 (1987); Hollister, *Parent–Child Immunity: A Doctrine in Search of Justification,* 50 Fordham L.Rev. 489, 513–14 (1982); *Reasonable Parent Standard,* 47 U.Colo.L.Rev. 795, 807–09 (1976). Arbi-

trary line-drawing in determining which parental activities involve exercise of discretion or authority has resulted in inconsistent verdicts among courts applying *Goller* or a derivative of the *Goller* exceptions. *See* Hollister, *supra,* at 513–14; Falk, *supra,* at 1470; *Compare e.g., Thoreson v. Milwaukee & Suburban Transport Co.,* 56 Wis.2d 231, 201 N.W.2d 745 (1972) *with Paige v. Bing Const. Co.,* 61 Mich.App. 480, 233 N.W.2d 46 (1975).

Perhaps even more troubling than the interpretative difficulties associated with the *Goller* approach is that the exceptions appear to give parents "carte blanche" to act negligently with respect to their children so long as the parents' conduct falls within one of the exceptions. *Gibson v. Gibson,* 3 Cal.3d 914, 92 Cal.Rptr. 288, 293, 479 P.2d 648, 653 (1971). There is no sound reason to distinguish among the various parental duties so as to permit unfettered parental discretion with respect to provision of necessities or the administration of discipline.

In order to ameliorate the problems caused by the abrogation with exceptions approach, the Supreme Court of California adopted a "reasonable parent" standard. *Id.* The reasoning of *Gibson* gives deference to a parent's exercise of broad discretion in performing parental functions yet recognizes that parental prerogatives must be exercised within reasonable limits. *Id.*

■ The experience of Minnesota is instructive in comparing the *Gibson* and *Goller* approaches. After twelve years of employing the *Goller* standard, adopted by *Silesky v. Kelman,* 161 N.W.2d 631 (Minn. 1968), the Minnesota Supreme Court decided that application of the exceptions had proven difficult and presented a real danger of arbitrary line drawing. *Anderson v. Stream,* 295 N.W.2d 595, 598 (Minn. 1980). The court concluded that instructing the jury on a reasonable parent standard would adequately protect functions that are parental in nature; therefore, the continued existence of the *Goller* exceptions was not justified. *Id.* at 598–99; *See also,* Hollister, *supra,* at 520, 526. The standard of reasonable care under the circumstances is well understood in tort law and does not require parents to meet an idealized standard of a father or mother. *Anderson v. Stream,* 295 N.W.2d at 599 (citation omitted). Misjudgments or mistakes committed in the exercise of parental acts do not necessarily constitute a tortious breach of duty. *Id.* "In determining whether the bounds of reasonable behavior have been transgressed, all relevant facts and circumstances would have to be considered.... It is hard to see why such a tailoring of the results of each case to its facts is not to be preferred to the erection of rigid classifications." *Id.* (quoting *Nolechek v. Gesuale,* 46 N.Y.2d 332, 413 N.Y.S.2d 340, 350, 385 N.E.2d 1268, 1277 (1978) (Fuchsberg, J., concurring)).

The *Gibson* alternative is sufficiently flexible to accommodate disparate child-rearing practices yet protects children from negligent parental excesses. *See Reasonable Parent Standard, supra,* at 809. The reasonable parent standard permits an injured child, or a third party plaintiff, to recover only if the parent fails to meet the standard of care required of parents. This Court, in the spousal immunity context, has recognized that courts are capable of examining and adjusting the duty of care required between family members according to the facts of the case. *S.A.V.,* 708 S.W.2d at 653.

The Restatement (Second) of Torts (1979) also addresses the issues. Section 895(G) provides: "(1) A parent or child is not immune from tort liability to the other solely by reason of that relationship; (2) repudiation of general tort immunity does not establish liability for an act or omission that, because of the parent-child relationship, is otherwise privileged or not tortious." The Restatement recognizes that the reasonable prudent parent is the applicable standard to be applied in suits involving negligent exercises of parental discretion. § 895(G), Comment k.

Some courts have abandoned the immunity doctrine without committing themselves to an alternative general formula of parental tort liabilities and privileges, leaving the problem for subsequent cases. *See, e.g.,*

*Nocktonick v. Nocktonick,* 227 Kan. 758, 611 P.2d 135 (1980); *Black v. Solmitz,* 409 A.2d 634 (Me.1979). The facts of the cases consolidated for this opinion do not allow delay. The cases require determination of a standard for application when proceedings continue.

This Court concludes that a reasonable parent standard should be adopted. The primary criticism of the reasonableness standard is the belief that parental judgment regarding the required degree of discipline and supervision of a particular child cannot be subjected to a judicial determination of reasonableness. *See Brunner v. Hutchinson,* 770 F.Supp. 517, 522 (D.S.D. 1991); *Holodook v. Spencer,* 36 N.Y.2d 35, 324 N.E.2d 338, 364 N.Y.S.2d 859 (1974).[2] Use of the reasonable parent standard, however, provides a single test for all aspects of the parent-child relationship. *See* Marcolin, *supra,* at 787. The standard can be managed to ensure that clearly unacceptable conduct giving rise to tort liability may be subjected to scrutiny. Courts will take into account, as they do in the context of the marital relationship, the relevant facts and circumstances of each parent and child so as to examine and adjust the duty of care required between family members, according to the facts of the case. *See S.A.V.,* 708 S.W.2d at 653. Adoption of a reasonable parent standard is particularly appropriate in Missouri in view of the fact that the legislature has adopted the standard in relation to a parent's duty in the context of the juvenile code. A parent is expected "to exercise *reasonable* parental discipline or authority" and may be subject to a judgment of restitution, along with the child, to a victim, a governmental entity, or a third party payor, when the child has inflicted property damage or caused damages resulting in personal injury or death. § 211.185.1–2, RSMo Supp.1990 (emphasis added).

## IV.

■ This holding shall apply only to those cases pending in the trial court in which a claim challenging and seeking the overturn of parental immunity doctrine has been timely raised as of the date of issuance of this opinion as well as to those cases in which appealable orders have been entered by the trial court and in which the aggrieved party (or parties) has preserved such issue in a timely manner for appellate review as of the date of issuance of this opinion and to causes of action that arise after the date of issuance of this opinion.

The Hartman and Armstrong cases are reversed and remanded. The disposition requires that related points be addressed. In the Hartman case, dismissal of the grandfather was premised on the fact that the father was immune and not subject to suit in Jefferson County. The holding of this opinion vitiates that finding and permits venue in Jefferson County. In the Armstrong case, the abrogation of the parental immunity doctrine allows Michael Armstrong to bring the wrongful death action for the death of Michael, Jr., against Michael, Jr.'s mother. § 537.085, RSMo 1986.

In summary, this Court abrogates the parental immunity doctrine of *Baker v. Baker.* Minor unemancipated children are authorized to bring actions sounding in negligence against their parents. The actions of parents are to be measured by a reasonable parent standard. The judgments in both the Hartman and Armstrong cases are reversed and remanded for fur-

---

**2.** New York held that a child had no cause of action against a parent for negligent supervision, reasoning that negligent supervision had not historically been a tort actionable by the child and that New York's apportionment and contribution rules would nullify any benefit that might inure to the child through allowing negligent supervision suits. *Holodook v. Spencer,* 36 N.Y.2d 35, 324 N.E.2d 338, 364 N.Y.S.2d 859, 871 (1974). *Holodook* is not in accord with the fact that Missouri recognizes causes of action for negligent supervision by children against individuals who could be considered standing in the shoes of parents. *Rogger v. Voyles,* 797 S.W.2d 844, 846 (Mo.App.1990) (grandfather liable for negligent supervision); *Swain by Swain v. Simon,* 699 S.W.2d 769, 773 (Mo.App.1985) (babysitter liable for negligent supervision); *Smith v. Archbishop of St. Louis,* 632 S.W.2d 516, 521–22 (Mo.App.1982) (teacher liable for negligent supervision).

ther proceedings consistent with this opinion.

All concur.