**Timothy A. CORWIN, By and Through Robert G. WOLFE, his next friend, Appellant–Respondent,**

v.

**The COLEMAN COMPANY, INC., Respondent–Appellant,**

**David A. Corwin and Debbie S. Powell, Respondents.**

**No. WD 48346.**

Missouri Court of Appeals, Western District.

May 10, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 28, 1994.

Application to Transfer Denied Aug. 15, 1994.

G. Spencer Miller, Kansas City, for appellant-respondent.

E. Wayne Taff, Kansas City, for respondent-appellant.

J. Christopher Spangler, Sedalia, for respondents.

Before BERREY, P.J., and KENNEDY and ELLIS, JJ.

ELLIS, Judge.

On November 21, 1991, Timothy A. Corwin, a minor, acting through his next friend, Robert G. Wolfe, filed a petition for damages

in the Circuit Court of Jackson County, naming as defendants his parents, David A. Corwin and Debbie S. Powell, and The Coleman Company, Inc. (hereinafter "Coleman"). The petition alleged, *inter alia*, that he sustained an injury when a "BB" discharged from a Coleman air gun being used by his brother struck him in the eye; that the injury was due to his parents' negligence; and that Coleman was also liable because of its negligence and/or certain manufacturing and design defects in the air gun.

After the petition was served, Coleman filed a motion to dismiss for improper venue. This motion was sustained, and the case was ordered transferred to the Circuit Court of Johnson County. Coleman also filed an answer in which it alleged, *inter alia*, that the injuries sustained by plaintiff Corwin resulted from the negligence of his parents, David A. Corwin and Debbie S. Powell, and sought apportionment of fault on any judgment.

Thereafter, defendants Corwin and Powell filed a motion to dismiss the petition on the basis of parental immunity. The motion was argued on July 19, 1992, and on the same date, defendants Corwin and Powell filed cross-claims against Coleman, alleging derivative injuries sustained as a result of the injuries to their son. Coleman answered the cross-claims, and filed its own cross-claims against defendants Corwin and Powell seeking contribution or indemnity with respect to any judgment which might be rendered against it on the action of plaintiff. Defendants Corwin and Powell answered, and also moved to dismiss Coleman's cross-claims.

On November 24, 1992, the trial court sustained the first motion made by defendants Corwin and Powell, and dismissed the petition as to them. Plaintiff Corwin subsequently filed a motion to reconsider such dismissal. On August 11, 1993, the trial court entered a further order in which it denied plaintiff's motion to reconsider, and further sustained the motion of defendants Corwin and Powell to dismiss Coleman's cross-claim against them. The court desig-

nated the order final for purposes of appeal, Rule 74.01(b), and both Coleman and plaintiff Corwin appeal the court's rulings. We reverse and remand for further proceedings.

On December 17, 1991, the Missouri Supreme Court handed down its decision in *Hartman v. Hartman*, 821 S.W.2d 852 (Mo. banc 1991). In *Hartman*, the Supreme Court abrogated the doctrine of parental immunity enunciated in *Baker v. Baker*, 364 Mo. 453, 263 S.W.2d 29 (1953). However, in doing so, it declared:

> This holding shall apply only to those cases pending in the trial court in which a claim challenging and seeking the overturn of [the] parental immunity doctrine has been timely raised as of the date of issuance of this opinion as well as to those cases in which appealable orders have been entered by the trial court and in which the aggrieved party (or parties) has preserved such issue in a timely manner for appellate review as of the date of issuance of this opinion and to causes of action that arise after the date of issuance of this opinion.

*Hartman*, 821 S.W.2d at 858. Here, plaintiff Corwin's petition for damages was filed on November 21, 1991, based on an injury sustained on February 18, 1989. Coleman was served on December 4, 1991. Under Rule 55.25(a), it had thirty days in which to file an answer or otherwise respond to the petition. On December 19, 1991, Coleman filed its motion to dismiss for improper venue and its answer to the petition. Service of the summons and petition on defendants Corwin and Powell was obtained on February 18, 1992.[1]

The trial court's dismissal of plaintiff's petition as to defendants Corwin and Powell, as well as its dismissal of Coleman's cross-claims against them, was based on the view that the doctrine of parental immunity was applicable to this case notwithstanding the decision in *Hartman*. In its order of November 24, 1992, the trial court stated:

1. When he filed his petition, plaintiff Corwin requested that service be held as to defendants Corwin and Powell, apparently because he thought they would both execute and file a voluntary "Entry of Appearance and Waiver of Service

of Summons." They never did so, and on January 14, 1992, plaintiff Corwin requested that alias summonses be issued. Defendants Corwin and Powell were eventually served on February 18, 1992.

The Court finds this case was not legally pending on December 17, 1991 and, therefore, *Hartman v. Hartman,* 821 S.W.2d 852 (Mo.1991), does not apply. The Court further finds that even if this case were pending on that date, the Petition filed by the Plaintiff did not attack, challenge or seek to overturn the parental immunity doctrine, and the abolition of parental immunity would not apply in this case.

### PLAINTIFF CORWIN'S APPEAL

■ On appeal, plaintiff Corwin asserts the trial court erred in dismissing his petition as to defendants Corwin and Powell because, first, his suit was pending when *Hartman* was handed down and it challenged the doctrine of parental immunity, so *Hartman* applies; or second, even if the parental immunity doctrine was applicable to the case, it nevertheless falls within an exception to the rule because the record reveals there would be no disruption of family harmony by virtue of prosecution of this action against his parents. Because plaintiff Corwin's first argument is dispositive of his appeal, we need not consider the second.

In evaluating the claim that *Hartman* is applicable, we must look to the language used by our Supreme Court in limiting its retrospective application. As noted earlier, the holding in *Hartman* applies to "those cases *pending* in the trial court in which a claim *challenging and seeking the overturn of [the] parental immunity doctrine has been timely raised*" as of December 17, 1991. *Hartman,* 821 S.W.2d at 858 (emphasis added). For this case to fall within the ambit of the *Hartman* holding, it must therefore (a) have been "pending" on December 17, 1991 and (b) have timely raised a challenge to the validity of the parental immunity doctrine. Defendants Corwin and Powell contend this case does not meet either requirement. Thus, they argue, the trial court properly dismissed the petition as to them, and likewise properly dismissed Coleman's crossclaims against them. We disagree.

Defendants Corwin and Powell, citing this court's decision in *Tri–City Constr. Co. v. A.C. Kirkwood & Assocs.,* 738 S.W.2d 925 (Mo.App.1987), first contend that because plaintiff Corwin initially directed that service be held as to them, the case was not pending until they were served on February 18, 1992.

Missouri case law on the effect of delayed service on the commencement of a civil suit is, at best, confusing. For the most part, the confusion can be traced to the prior Rule 53.01, which was in effect until December 1, 1972. It provided, in pertinent part: "Civil actions may be instituted ... by filing in the office of the clerk of the proper court a petition ... and suing out thereon a writ of summons.... The filing of a petition and suing out of process therein shall be deemed the commencement of a civil action."

The present Rule 53.01 became effective December 1, 1972. It provides, in its entirety: "A civil action is commenced by filing a petition with the court." As can be seen, Rule 53.01 no longer requires the "suing out a writ of summons" or "the suing out of process" as a prerequisite to the commencement of a civil action.

In *State ex rel. Kincannon v. Schoenlaub,* 521 S.W.2d 391 (Mo. banc 1975), the Missouri Supreme Court analyzed the effect of this 1972 rule change in some detail. In this case, a husband and wife filed separate divorce suits in different counties. The husband filed his divorce suit in Buchanan County before the wife filed her suit for divorce in Boone County, but the wife obtained service of process before the husband did. When the Buchanan County judge overruled the wife's motion to dismiss based on her claim the Boone County Circuit Court had exclusive jurisdiction in the divorce action, she brought an original proceeding in prohibition to restrain him from exercising jurisdiction.

First, the Court rejected the wife's argument that the amendment to Rule 53.01 was not relevant because it pertains to when a suit is "commenced" and not to when it becomes "pending." 521 S.W.2d at 393. It then quoted at length from the report of the Advisory Committee on Rules submitted to the Court prior to the amendment of Rule 53.01:

> This [the revised Rule 53.01] is Federal Rule [of Civil Procedure] 3 with the term "complaint" changed to "petition."

There are at least four situations in which the time the civil action begins is important:

1. Statute of limitation cases. Most of the cases are in this category. See *Continental Electric Co. v. Ebco, Inc.,* 375 S.W.2d 134 (Mo.1965).

2. Partition suits. These cases usually involve a quarrel as to which attorney receives the attorney fee. See *Leavitt v. Lamb,* 77 S.W.2d 505 (Mo.App.1934).

3. Divorce cases in which one party files in one county and the other party in another.

4. Cases involving compulsory counterclaims and actions are filed in two courts.

Cases under the present rule probably consistently hold that the civil action commences when filed if service is immediately made on the defendant. But when there is a delay in service for some reason or other there seems to be inconsistency. In *Continental Electric Co. v. Ebco, Inc., supra,* a statute of limitations case, the action was held to have commenced when service was secured while in *Leavitt v. Lamb, supra,* a partition suit, the court said the action commenced when the petition was filed. There are two reasons why the committee recommends a change in the present rule and the adoption of the federal rule:

1. To remove the inconsistency in the present case law.

2. The bar and litigants are benefitted by uniformity in the two procedural systems which govern the assertion of their rights. If there were strong state policy reasons for retaining the present rule this would override the benefits of uniformity. The committee does not find any strong state policy reasons in this situation.

*Schoenlaub,* 521 S.W.2d at 393–94 (internal quotation marks omitted, emphasis removed).

Reasoning that "federal decisions construing the federal rule should be considered" since the revised Rule 53.01 was derived directly from Federal Rule 3, the Court then cited a number of federal cases holding that a court's jurisdiction is "invoked by the filing of the complaint." *Schoenlaub,* 521 S.W.2d at 394. It also found Florida's experience

illustrative. Florida courts had formerly held that jurisdiction attaches upon service of summons. However, after the adoption of a state rule "based on Federal Rule 3," the court in *Hunt v. Ganaway,* 180 So.2d 495 (Fla.Dist.Ct.App.1965), found the new rule to be decisive and held that a court's jurisdiction attaches when the petition is first filed, not when the summons is served. 521 S.W.2d at 394.

The *Schoenlaub* Court defended the revised Rule 53.01 on policy grounds as well:

The uncertainty possible under the rule that a suit does not become pending until process has been served is amply demonstrated by the facts of the instant case. Such uncertainty is substantially eliminated by Rule 53.01. Further, uniformity with the federal practice is gained and the inconsistency existing under the previous decisions on this question is eliminated.

*Id.*

The Court ultimately held that since the husband filed his divorce petition before the wife filed hers, the husband's divorce action was "pending" when his wife filed and the Circuit Court of Buchanan County had exclusive jurisdiction over the subject matter of his litigation notwithstanding the fact she had obtained service first. It therefore concluded the respondent judge had properly overruled the wife's motion to dismiss. *Id.*

Significantly, the Court also noted:

The cases heretofore cited as supporting the general rule which was applicable prior to adoption of amended Rule 53.01 should no longer be followed.

*Schoenlaub,* 521 S.W.2d at 395.

Rule 53.01 has not been changed since 1972, but despite the clarity of the opinion, on several occasions *Schoenlaub* has actually been cited in support of the rule it explicitly rejected. *See, e.g., State ex rel. General Dynamics Corp. v. Luten,* 566 S.W.2d 452, 458 (Mo. banc 1978); *see also Baker v. Baker,* 804 S.W.2d 763 (Mo.App.1990) (noting the apparent confusion surrounding *Schoenlaub* and discussing various cases citing it for the opposite of its holding).

One case in which *Schoenlaub* was properly applied is *Slack v. Englert,* 617 S.W.2d 483

(Mo.App.1981), decided by the Eastern District. *Slack* was a wrongful death action filed by the children of Susan D. Slack, who died on July 15, 1978. The petition was filed on July 13, 1979, and the applicable statute of limitations at the time was one year. However, shortly after the petition was delivered to the clerk's office, appellant's attorney called and informed the clerk that it was unnecessary to deliver the summonses to the county sheriff for service because settlement negotiations were ongoing and he believed the case would be settled soon. He asked the clerk to issue the summonses but to hold them for a few days to see if a settlement would be reached. No settlement was obtained, and the clerk delivered the summonses to the sheriff on July 19, 1979. The trial court dismissed the petition as barred by the statute of limitations, ruling that when a petition is filed but process or service is withheld by plaintiff, the action is not commenced on the date of filing but the date of service.

The appellate court reversed, holding that "appellant's action was commenced within the statutory period despite the subsequent request [to delay delivery of the summonses to the sheriff] by appellant's attorney." *Slack,* 617 S.W.2d at 486. The court noted that the cases relied on by respondents supporting the trial court's order of dismissal were all decided prior to the 1972 amendment of Rule 53.01. It then quoted the *Schoenlaub* decision at length concerning the effect of the amended Rule 53.01. Next, the court cited various federal cases holding that under Federal Rule 3, (1) a statute of limitations is tolled merely by filing a complaint, and (2) the timely filing of a complaint constitutes commencement even when the complaint is accompanied by a request to withhold issuance of summons. *Id.* at 485. Finally, the court observed that even though there was judicial recognition of the principle that obstruction in the issuance of summons or service delayed commencement in cases decided before adoption of current Rule 53.01, the principle was not uniformly followed in Missouri. *Id.* at 485–86 (citing *Leavitt v. Lamb,* 77 S.W.2d 505 (Mo.App.1934)).

Defendants Corwin and Powell rely primarily on this court's decision in *Tri–City Constr. Co. v. A.C. Kirkwood & Assocs.,* 738 S.W.2d 925 (Mo.App.1987), which, like *Slack,* involved a statute of limitations question. In *Tri–City,* we read Rules 53.01 and 54.01 (which directs the clerk to forthwith issue a summons and deliver it to the sheriff upon the filing of a petition) in conjunction, and found that commencement of a suit contemplates not only filing of the petition but issuance of summons and delivery to the sheriff as well. This court further stated that where "instructions are given which interdict this procedure, the suit is not commenced" on the date of filing, relying on *U.S. Laminating Corp. v. Consolidated Freightways Corp.,* 716 S.W.2d 847 (Mo.App.1986) for the proposition that "where the facts show a delay between the filing of the petition and the eventual service of process on the defendant, there is a lack of due diligence and the statute [of limitations] is not tolled." *Tri–City,* 738 S.W.2d at 928, 929.

*Tri–City* is of no help to defendants Corwin and Powell because it was implicitly overruled by our Supreme Court in *Ostermueller v. Potter,* 868 S.W.2d 110 (Mo. banc 1993). In that case, the plaintiffs, after three unsuccessful attempts to serve the defendant, suffered a nonsuit on their timely-filed petition for damages resulting from a car accident. Within a year of the dismissal, the plaintiffs filed a second petition alleging the same cause of action. Service was eventually obtained on the defendant, but by that time, more than five years had elapsed since his alleged negligent acts. The defendant raised a statute of limitations defense in his answer, and the trial court dismissed the second petition with prejudice on that ground.

The Missouri Supreme Court reversed the order of dismissal, holding that under "the plain language of Rule 53.01," the plaintiffs "commenced the action before the statute of limitations expired." *Ostermueller,* 868 S.W.2d at 111. It then held that since the plaintiffs had refiled within the one-year grace period provided in § 516.230, RSMo 1986 (Missouri's "savings statute"), the second petition was not barred by the statute of limitations either. *Id.*

In so doing, the Court expressly rejected the defendant's argument, based on *U.S. Laminating Corp., supra*, that the first suit was not commenced within the statute of limitations because the plaintiffs failed to exercise due diligence in effecting process:

> Prior to amendment in 1972, Rule 53.01 ... defined commencement of a civil action as "[t]he filing of a petition and suing out of process therein." [Defendant's] contention fails to recognize that this Court amended Rule 53.01 in 1972. The rule no longer includes "suing out of process;" it requires only the filing of a petition with the court to commence an action.... *U.S. Laminating Corp.*, to the extent that it conflicts with this opinion, should no longer be followed.

*Ostermueller*, 868 S.W.2d at 111. Since *Tri–City* expressly relied on *U.S. Laminating Corp., Tri–City* was implicitly overruled in *Ostermueller*.

Two other cases deserve mention in considering the issue before us. In *State ex rel. City of Springfield v. Crouch*, 687 S.W.2d 639 (Mo.App.1985), the Southern District discussed the holding in *Schoenlaub* and noted subsequent cases erroneously citing it for the prior rule. Although the court concluded that it did not need to decide whether *Schoenlaub* was controlling to resolve the issue before it, it did state that it favored the rule adopted in *Schoenlaub* "as it prevents avoidance of service from being critical...." *Crouch*, 687 S.W.2d at 642. Likewise, in *State ex inf. Riederer v. Collins*, 799 S.W.2d 644, 650 (Mo.App.1990), this court discussed the *Schoenlaub* case. We observed that because *Schoenlaub* "has since been erroneously cited as supporting the prior rule.... it is unclear from case law when an action becomes 'pending.'" We ultimately concluded that we need not decide which rule to follow because neither party had raised the issue of imperfect service of process.

Here, while we believe *Schoenlaub* should be followed because it promotes uniformity and provides certainty to the courts, the bar, and litigants as to when actions are commenced and therefore "pending," we also need not decide. In the instant appeal, the petition was filed on November 21, 1991, twenty-six days prior to issuance of the opinion in *Hartman* on December 17, 1991. While plaintiff Corwin's attorney did ask the clerk to delay issuing summonses for defendants Corwin and Powell because he believed they would execute and file documents waiving service of summons and entering their appearance, the clerk did forthwith issue a summons to defendant Coleman, which, with a copy of the petition, was delivered to the sheriff and served on Coleman on December 4, 1991, thirteen days before *Hartman* was handed down. Furthermore, as noted earlier, when it became clear defendants Corwin and Powell would not voluntarily waive service, plaintiff Corwin's attorney requested that appropriate alias summonses be issued, and both were eventually served, albeit after the decision in *Hartman*. Thus, one of the three defendants in this case was served prior to issuance of the opinion in *Hartman* and we deem this sufficient to qualify the action as "pending" on December 17, 1991. Moreover, the facts of this case are so similar to those in *Slack* that we would consider it controlling even if Coleman had not been served prior to December 17, 1991.

Defendants Corwin and Powell also argue that, even if the case was pending on the date *Hartman* was decided, the petition did not timely raise a challenge to the validity of the parental immunity doctrine and, therefore, fails to meet the second requirement necessary for application of *Hartman*. They contend the petition contains no language asserting that parental immunity should be abrogated. Thus, the argument goes, plaintiff Corwin failed to challenge the validity of the doctrine. We disagree.

In evaluating whether plaintiff Corwin met the second prong of the *Hartman* test, we look to *Hartman* itself for guidance. *Hartman* involved two cases, consolidated by the Supreme Court for opinion. In the *Hartman* case proper, Christine and Todd Hartman, by their next friend, filed an action in the Circuit Court of Jefferson County against their father and grandfather for personal injuries. The petition alleged that the father and grandfather negligently operated and maintained a propane gas stove and tank, causing them to explode and thereby injuring the two children. The father filed a motion

for summary judgment, asserting that the doctrine of parental immunity prevented the children from bringing the action against him. The grandfather filed a motion to dismiss and a motion to quash service for lack of venue, arguing that venue was proper in Jefferson County only because the father lived in the county, and venue would no longer exist against the grandfather if the action against the father was dismissed. The trial court sustained all motions, resulting in the appeal.

The other case decided by the opinion was *Armstrong v. Armstrong.* In that case, the second amended petition alleged Mary Armstrong's vehicle stalled on the I-435 bridge across the Missouri River in Kansas City. Mary's minor children, Tracy and Michael, Jr. tried to push the car off the bridge and, while doing so, were struck by a van operated by Jeffrey Tiller. Tracy was severely injured and Michael, Jr. died.

Tracy, by her next friend, filed suit in the Circuit Court of Clay County against her mother, Mary Armstrong, as well as Jeffrey Tiller and American Family Insurance. Michael Armstrong (the children's father), on his own behalf, filed an action against the same defendants for the wrongful death of Michael, Jr. The two actions claimed the negligence of Jeffrey Tiller and Mary Armstrong combined to cause the death of Michael, Jr. and the injuries to Tracy.

Mary Armstrong filed a motion to dismiss in both cases, asserting the actions were barred by virtue of the parental immunity doctrine. The trial court sustained both motions, and the appeals followed.

The *Hartman* opinion, in detailing the background of the cases leading to the Supreme Court's consideration, nowhere suggests that the petition in any of the cases contained any type of allegation, statement, or prayer that it was "challenging and seeking abrogation of the parental immunity doctrine." Rather, it is apparent the petitions alleged that the minor children who were plaintiffs were the children of defendants William E. Hartman and Mary Armstrong, respectively. By virtue of the fact that minor children were bringing an action against their parent, they were challenging and seeking the overturn of the doctrine of parental immunity. In other words, the mere filing of the suit by the child against his or her parent was itself a challenge to the continued vitality of the doctrine.

It is true that for the issue to be joined the defendants had to file a motion to dismiss or a motion for summary judgment raising the doctrine. However, by virtue of the procedural background of the cases it was deciding, the *Hartman* Court was keenly aware that, as a practical matter, the manner in which a challenge would be raised is by the filing of a petition on behalf of a minor child against his or her parent; that thereafter, the parent would raise the parental immunity doctrine by appropriate motion; and the trial court would then rule. Under such circumstances, it would make no sense for the Court to require a litigant to file a petition containing an allegation, statement or prayer specifically declaring that the plaintiff was "challenging and seeking the overturn of [the] parental immunity doctrine," 821 S.W.2d at 858, for that litigant to be entitled to retroactive application of the holding in *Hartman.*

We conclude, therefore, the Court intended that a case timely raising a claim challenging the continued vitality of the parental immunity doctrine was a negligence case in which the petition contained allegations that the plaintiff was a minor child and one or more defendants were a parent or parents of the child. Our conclusion is further supported by *Church v. Moon Freight Lines, Inc.,* 791 F.Supp. 792, 793 (E.D.Mo.1992), in which the court, applying Missouri law, held that the defendants/third-party plaintiffs "challenged" the doctrine of parental immunity in the sense contemplated in *Hartman* "by attempting to file a third-party petition for contribution against the minor child plaintiff's mother."

We must now determine whether the petition for damages in this case meets these criteria. Count III of the petition alleged that plaintiff is a minor under the age of 14; that defendant David A. Corwin is plaintiff's father; that defendant Debbie S. Powell is his mother; that plaintiff was injured when a "BB" from an air gun being used by his brother struck him; that defendants Corwin and Powell were negligent in several respects; and that as a direct result of their

negligence, he sustained damages and injuries. Count III also contained a prayer for judgment in an amount which would fairly and justly compensate him for his damages, plus the costs of the action.

Measured by the standard discussed *supra*, Count III of plaintiff Corwin's petition for damages clearly timely raised a challenge to the doctrine of parental immunity. We therefore hold that the trial court erred in dismissing plaintiff Corwin's petition for damages against his parents, defendants David A. Corwin and Debbie S. Powell. Accordingly, the decision of the trial court is reversed and the case is remanded for further proceedings.

### COLEMAN'S APPEAL

Coleman appeals the trial court's dismissal of its cross-claims against defendants Corwin and Powell for contribution or indemnity. On appeal, Coleman argues that plaintiff Corwin's action against his parents, defendants Corwin and Powell, was not barred by the doctrine of parental immunity, and therefore, its claim for contribution or indemnity against the parents was proper and the trial court erred in dismissing its cross-claims. Since this point is dispositive of its appeal, we need not decide the three other points raised in Coleman's brief.

The Missouri Supreme Court recognized the right of contribution or apportionment of liability based on the relative fault of tortfeasors for damages resulting from the tort in *Missouri Pac. R.R. v. Whitehead & Kales Co.*, 566 S.W.2d 466 (Mo. banc 1978). This right "presupposes actionable negligence of both parties toward a third party." *Id.* at 468. In *Kendall v. Sears, Roebuck & Co.*, 634 S.W.2d 176, 180 (Mo. banc 1982), the Court determined that the right to contribution is derivative, and therefore "parental immunity bars any action by a defendant seeking to apportion liability with one clothed in such immunity...."

In the instant case, we have determined that the holding in *Hartman* is applicable to plaintiff's petition for damages against his parents, defendants Corwin and Powell, and that the petition states a claim of actionable negligence against those defendants. Similarly, the petition alleges actionable negligence against Coleman. Since defendants Corwin and Powell, as well as Coleman, could all therefore be held liable to plaintiff, Coleman has a right to seek contribution or indemnity from defendants Corwin and Powell. Thus, the trial court erred in dismissing Coleman's cross-claims against defendants Corwin and Powell and the decision of the trial court is reversed and the case remanded for further proceedings.

To summarize, we find the parental immunity doctrine inapplicable to plaintiff's action against his parents, defendants Corwin and Powell. We also conclude that under plaintiff's petition, all three defendants could be found liable to plaintiff. We therefore hold that the trial court erred in dismissing plaintiff's petition as against his parents, defendants Corwin and Powell, and in dismissing Coleman's cross-claims for contribution or indemnity against defendants Corwin and Powell.

The decision of the trial court is reversed and the case remanded for further proceedings consistent with this opinion.

All concur.